SHALABH KUMAR, Plaintiff-Appellant, v. DEBORAH H. BORNSTEIN *et al.*, Defendants-Appellees.

Second District   No. 2—04—0134

Opinion filed December 13, 2004.—Rehearing denied January 12, 2005.

David G. Susler, of Carol Stream, and Robert G. Black, of Law Offices of Robert G. Black, of Naperville, for appellant.

Bart T. Murphy and Daniel J. Peters, both of Wildman, Harrold, Allen & Dixon, L.L.P., of Lisle, for appellees.

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Shalabh Kumar, appeals the order of the circuit court of Du Page County dismissing his complaint against defendants, Deborah H. Bornstein and Gardner Carton and Douglas, attorney and law firm, respectively, pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2002)). The trial court dismissed plaintiff's complaint for abuse of process because, by failing to allege an actual arrest or seizure of property, he failed to satisfy the second element of the tort of abuse of process. Plaintiff claims that Illinois law does not require that he allege an actual arrest in order to

sustain the claim. Plaintiff asserts that the claim requires that he show that process was used to accomplish some result that was collateral to the purview of the process, and he contends specifically that his allegations of the *ex parte* issuance of a body attachment order and the attempt to arrest him were sufficient to state a claim. We agree that arrest is not a required element of the tort. However, we find that the process was not used for any purpose other than that for which it was intended, because the writ of attachment and arrest warrant were issued to obtain compliance with discovery subpoenas after plaintiff's entities failed to obey them. Accordingly, we affirm the trial court's dismissal on this ground.

## FACTS

Plaintiff's amended complaint alleged the following relevant facts. Plaintiff is the chief executive officer of a national group of companies, including Viktron Limited Partnership (Viktron). Prior to 1998, Woodward Governor Company (Woodward) ordered certain products from Viktron and failed to pay for them in an amount in excess of $1 million. Viktron sued Woodward to recover the amount due. On October 19, 1998, on behalf of Woodward, defendants filed a breach of contract suit in Colorado against Viktron.

In late 2000, defendants filed an ancillary proceeding in Cook County, Illinois, requesting discovery from various companies owned by plaintiff. Plaintiff alleged that in 2000, he attended a meeting with personnel of Woodward and was told that agents of Woodward would make plaintiff's life miserable if he continued to attempt to have monies collected by Viktron from Woodward. Woodward had previously offered to pay Viktron monies, but not enough, to dismiss Viktron's lawsuit. At the 2000 meeting, Woodward threatened "to destroy" plaintiff if Viktron continued to sue Woodward.

On February 14, 2001, defendants filed another ancillary proceeding in Cook County for the alleged purpose of issuing deposition and document subpoenas against three entities owned by plaintiff, Autotech Technologies Limited Partnership, Kumar Family Limited Partnership, and Electronic Support Systems Corporation (the Kumar Entities). None of the Kumar Entities or plaintiff was at that time named as a defendant in the underlying Colorado action. Plaintiff alleged that, when his attorneys demanded that defendant Bornstein stop "this harassment disguised as discovery," Bornstein agreed to a meeting, wherein she reiterated the threat to destroy plaintiff and his business entities.

On April 5, 2001, defendants filed a motion in the Colorado case for leave to file a second amended complaint and add several new par-

ties as defendants to that action, including plaintiff and the Kumar Entities.

On May 3, 2001, defendants filed a petition for a rule to show cause in Illinois against the Kumar Entities for failing to produce discovery. Plaintiff alleged that all of the discovery was available in the Colorado case in which Woodward had joined the Kumar Entities. We note, however, that the Kumar Entities were not joined in the Colorado case until May 9, 2001, when the Colorado court granted the motion to add them and plaintiff.

Plaintiff alleged that by suing him and his business entities in Colorado, defendants forced him to retain Colorado counsel and that defendants sued the same parties in Illinois for the sole purpose of continuing their campaign of harassment against plaintiff and his business entities. Plaintiff alleged that Woodward refused to dismiss the Illinois suit even though it served no legitimate purpose.

On May 9, 2001, the Illinois court entered the rule to show cause against the Kumar Entities and ordered that it was returnable on May 16, 2001. Plaintiff alleged that the order of contempt was not granted against him personally. Plaintiff further alleged that the defendants in the Colorado case filed a motion for a protective order on May 15, 2001, which created an automatic stay of discovery in the Colorado case. In addition, plaintiff alleged that discovery was not allowed in the Colorado cases because an answer to the complaint had not been filed nor was an answer yet due.

On May 22, 2001, the court granted the rule to show cause and ordered that a writ of attachment issue for the Kumar Entities for failure to appear and failure to comply with the subpoenas *duces tecum* served on them. Plaintiff alleged that defendants proceeded with the writ of attachment in the Illinois case despite having previously added plaintiff and the Kumar Entities as defendants in the Colorado case and despite discovery being stayed in that case.

Plaintiff alleged that, on June 6, 2001, defendants appeared *ex parte* before the court and secured the entry of a body attachment order against plaintiff personally and as representative of the Kumar Entities. Plaintiff alleged that defendants appeared before the judge in his chambers and not pursuant to any motion or call and that defendants did not show plaintiff's counsel the June 6 order for review, nor did they provide any notice of intent to have it entered or to change the order to hold plaintiff personally in contempt and subject to arrest. Plaintiff alleged that his lawyers learned of the June 6 order only when defendants referred to it in a pleading filed in the Colorado case.

On June 20, 2001, the Kumar Entities filed a motion to vacate the

May 22, 2001, contempt order entered against them in the Illinois proceedings. The motion was not filed on behalf of plaintiff because, plaintiff alleged, at that time defendants "kept secret the entry of the June 6, 2001[,] order against him."

On June 28, 2001, defendant Bornstein participated in a status hearing before the Colorado court. At that hearing, the court granted the defendants therein, including plaintiff, 30 days to provide written discovery. Plaintiff alleged that, despite the knowledge that discovery was stayed in the Colorado case at least another 30 days, defendants continued to pursue contempt proceedings against him in Illinois with the intent of arresting him.

On July 17, 2001, the Lake County sheriff issued to plaintiff a notice of civil arrest, directing him to surrender to the sheriff. On July 24, 2001, plaintiff alleged that his attorneys discovered for the first time the June 6 order of body attachment against plaintiff personally. After learning of the order, plaintiff requested that defendants voluntarily agree to vacate the writ of attachment. Defendants refused, "forcing" plaintiff to file a motion to vacate the May 22 contempt order and the June 6 attachment order.

Plaintiff was deposed on September 10, 2001, thus purging the contempt. On September 12, 2001, the court vacated the writ of attachment and arrest warrant against plaintiff.

On April 17, 2003, plaintiff sued defendants for abuse of process. Plaintiff alleged that defendants engaged in the above pattern of conduct in an attempt to undermine and discredit his professional reputation and his businesses, to harass and intimidate him, and to cause personal harm to him. Plaintiff alleged that, despite having added plaintiff and the Kumar Entities to the Colorado case and despite the discovery stay order entered in the Colorado case, defendants improperly continued to pursue the rule to show cause by procuring an order of contempt and a writ of attachment against plaintiff in Illinois.

Defendants filed a section 2—615 motion to dismiss the complaint, asserting that plaintiff failed to allege a claim for abuse of process because he failed to allege that he suffered an actual arrest or physical seizure of property as is uniformly required for an abuse of process claim in Illinois. The trial court agreed with defendants. When counsel for plaintiff requested leave to amend, the court specifically asked him if he could plead that plaintiff suffered any actual arrest or physical seizure of his property. Plaintiff's counsel admitted that he could not plead an actual arrest but claimed that there "are additional facts that are not contained in the complaint surrounding the issue of arrest that I think I should have a chance to replead." Accordingly, the trial court dismissed plaintiff's complaint without prejudice.

Thereafter, plaintiff filed an amended complaint. On the issue of arrest, plaintiff alleged that on July 23, 2001, the Lake County deputy sheriff went to plaintiff's house to arrest him but plaintiff was not home. Plaintiff alleged that he was unable to return to his home because of the danger of being arrested.

Defendants filed another section 2—615 motion to dismiss, arguing that plaintiff never alleged that he was actually arrested and, therefore, he failed to cure the fundamental defect found by the court with respect to the original complaint. The court agreed and dismissed the complaint with prejudice. Plaintiff timely appeals, contending that the trial court erred in dismissing his complaint.

## ANALYSIS

Before turning to plaintiff's contention, we first observe that the complaint contains multiple unfounded allegations, which we must ignore. In analyzing whether allegations are sufficient to establish a cause of action for abuse of process, we must ignore conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. *Landau v. Schneider*, 154 Ill. App. 3d 875, 878 (1987). For example, plaintiff alleges that defendants "kept secret" the June 6 body attachment order entered after the May 22 hearing, where the court found that the Kumar Entities violated the court's discovery orders, and the court granted the rule to show cause and instructed that an attachment order be entered. The body attachment order was a public document available in the clerk's office. Moreover, the May 22 order is against the Kumar Entities, which plaintiff pleaded he controlled. The court properly held plaintiff responsible for the failure of the entities of which he was the chief executive officer, the sole officer, and the sole general partner, respectively. See *People v. Reynolds*, 350 Ill. 11, 16 (1932). Furthermore, counsel for the Kumar Entities were present at the hearing on May 22. Additionally, at the August 2, 2001, hearing on plaintiff's motion to vacate the June 6 order, counsel argued to the judge that the order entered on June 6 was done with no notice and was not presented in open court. The judge responded, in part, that he did not hear matters in chambers and warned counsel to be careful about making such allegations. The judge further stated that he thought it was a typed order and that he held the hearing in open court.

The question presented by a section 2—615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Hough v. Kalousek*, 279 Ill. App. 3d 855, 862 (1996). Illinois is a fact-pleading jurisdiction that requires a

plaintiff to present a legally and factually sufficient complaint. *Hough,* 279 Ill. App. 3d at 863. The plaintiff is not required to prove his or her case, but must allege sufficient facts to state all the elements of the asserted cause of action. *Inland Real Estate Corp. v. Tower Construction Co.,* 174 Ill. App. 3d 421, 433 (1988).

■ When ruling on a section 2—615 motion to dismiss, the trial court should admit all well-pleaded facts as true and disregard legal and factual conclusions that are unsupported by allegations of fact. *Neurosurgery & Spine Surgery, S.C. v. Goldman,* 339 Ill. App. 3d 177, 182 (2003). If, after disregarding any legal and factual conclusions, the complaint does not allege sufficient facts to state a cause of action, the trial court must grant the motion to dismiss. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.,* 275 Ill. App. 3d 452, 457 (1995). We may affirm the dismissal of the amended complaint on any ground supported by the record, regardless of the basis for the trial court's decision. *Aboufariss v. City of De Kalb,* 305 Ill. App. 3d 1054, 1058 (1999). We review *de novo* an order dismissing a complaint under section 2—615. *Cwikla v. Sheir,* 345 Ill. App. 3d 23, 29 (2003).

Plaintiff claims that he is not required to allege an actual arrest in order to sustain a claim for abuse of process. Plaintiff asserts that the gravamen of the tort is whether the process was used to accomplish some result that is beyond the purview of the process. Plaintiff argues that his allegations of defendants' harassing and surreptitious use of the process to procure the issuance of a body attachment order and an arrest warrant were sufficient to state his claim and, therefore, the trial court erred in dismissing it.

■ While we have found no Illinois case, and plaintiff cites none, that allows an abuse of process claim in the absence of an arrest or physical seizure of property, we agree with plaintiff that an arrest is not a required element of abuse of process. Abuse of process is defined as the misuse of legal process to accomplish some purpose outside the scope of the process itself. *Bonney v. King,* 201 Ill. 47, 50-51 (1903). The *only* elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings. *Holiday Magic, Inc. v. Scott,* 4 Ill. App. 3d 962, 966 (1972). In order to satisfy the first element, a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment. In order to satisfy the second element, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process. *Neurosurgery,* 339 Ill. App. 3d at

183. The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law. *Neurosurgery*, 339 Ill. App. 3d at 183.

Although our review of the relevant case law *generally* views an actual arrest or seizure of property as a sufficient fact to state a claim for abuse of process, it is not a necessary element. We agree with plaintiff that "generally" does not mean "absolutely." Otherwise, the majority of courts that have analyzed claims for abuse of process would not have determined whether something less than an arrest or seizure of property amounted to an abuse of process.

For example, in *Neurosurgery*, the plaintiff filed a defamation action against the defendant. The defendant counterclaimed for abuse of process, alleging that she read an article in the newspaper about a lawsuit filed by the plaintiff and, although the article did not mention the defendant's name, she guessed she was the defendant referred to in the article. The defendant then called the plaintiff's attorney, and he threatened to publish the defendant's confidential medical and financial records in the newspaper. Thereafter, the defendant was served with a summons and complaint and a letter from the plaintiff's attorney seeking to discuss an early resolution of the case. The defendant again called the plaintiff's attorney, and he repeatedly implied that he would dismiss the case if the defendant would testify favorably for his client regarding another matter, which would require her to testify falsely that she had an affair and that she gave sexual favors in return for drugs.

We did not find that the failure to allege an arrest barred the defendant from claiming abuse of process. Rather, we analyzed whether the defendant's allegations satisfied the two elements of the tort, and we determined that the trial court properly dismissed the claim. No facts were alleged showing a misapplication of process, and the mere issuance of a summons is not an abuse of process. *Neurosurgery*, 339 Ill. App. 3d at 183. Thus, we reached our holding without considering whether the failure to allege an arrest or property seizure was fatal to the plaintiff's claim.

However, we noted in *dicta* that "[i]n a proper factual context, a fraudulent and malicious manipulation of service of summons might constitute an abuse of process; however, no such facts were alleged in this case." *Neurosurgery*, 339 Ill. App. 3d at 184. Thus, we left the door open for service of summons, a process far more benign than an arrest or property seizure, to constitute an abuse of process, given the proper factual context. We further noted in *dicta* that the *Holiday Magic* court stated that a misapplication of process has been found *only* in cases in which a plaintiff has suffered an actual arrest or seizure of property. *Neurosurgery*, 339 Ill. App. 3d at 184. We did not

hold that an arrest or property seizure is required to state a claim for relief. We cited *Holiday Magic* only for the proposition that a proper factual setting without an arrest *may* be sufficient to sustain a claim.

In *Holiday Magic*, as in *Neurosurgery*, the issue of whether the plaintiff was actually arrested was not the focus of the court's inquiry or rationale in dismissing the complaint. There, the plaintiff alleged that the defendants instituted lawsuits against him merely to destroy his business. The plaintiff did not allege or implicate any court-issued process, only the institution of legal proceedings, which was held to be insufficient to support an abuse of process claim. In reciting its rationale, the *Holiday Magic* court applied the well-established two-pronged test for abuse of process, acknowledging that the second element is the gravamen of the action. *Holiday Magic*, 4 Ill. App. 3d at 967. The court concluded that none of the alleged conduct related to abuse or even to the use of the court's process. Defining "process" as "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property," the court found that the mere filing of pleadings is not "process" because pleadings are created and filed by the litigants, whereas "process" is issued by the court. *Holiday Magic*, 4 Ill. App. 3d at 968. The court further stated that publicity associated with filing lawsuits and making statements to news media have no relation to the court's process. *Holiday Magic*, 4 Ill. App. 3d at 968. Because the complaint contained no allegation regarding any use of process by the defendants, the court held that it failed to state a cause of action for abuse of process. *Holiday Magic*, 4 Ill. App. 3d at 969.

After concluding that the complaint failed to state a claim for abuse of process, the court stated in *dicta*: "We have seen that the mere use of process by itself is not tortious. To constitute an abuse of the process in the legal sense, there must be some act in the use of the process which is not proper in the regular course of the proceedings. This element has been *generally* defined by the courts of Illinois as existing only in instances in which the plaintiff has suffered an actual arrest or a seizure of property." (Emphasis added.) *Holiday Magic*, 4 Ill. App. 3d at 969. The court continued that it "may well be that in a proper factual context a fraudulent and malicious manipulation of service of summons could itself constitute abuse of process," but no such facts were alleged in that case. *Holiday Magic*, 4 Ill. App. 3d at 969.

To support their argument that an abuse of process requires an arrest or seizure of property, defendants quote the following rule from the case of *John Allan Co. v. Brandow*, 59 Ill. App. 2d 328, 335 (1965): " 'An action for abuse of process will not lie unless there has been

either an injury to the person or the property.' " However, an examination of *Brandow* reveals that this quote actually misquotes the case of *Bonney* and does not state the law properly.

In *Bonney*, the court compared the differences between an action for malicious prosecution and an action for abuse of process. The court held that an action for the *malicious prosecution* of a civil suit without probable cause will not lie where the process in the suit so prosecuted is by summons only and is not accompanied by arrest of the person or seizure of the property or other special injury not necessarily resulting in all suits prosecuted to recover for like causes of action. *Bonney*, 201 Ill. at 50. The court defined *abuse of process* as the existence of an ulterior purpose and an act in the use of the process not proper in the regular prosecution of the proceeding. The court observed that regular and legitimate use of process, though with a bad intention, is not abuse of process. The court then pointed out that the "declaration does not aver either that the plaintiff was arrested or his property seized" and that the mere institution of civil suits does not constitute an abuse of process. *Bonney*, 201 Ill. at 51. The court further pointed out that abuse of process lies for the improper use of process *after* it has been issued, not for maliciously causing process to be issued. *Bonney*, 201 Ill. at 50. It is clear in *Bonney* that neither an arrest nor a seizure of property is required to claim abuse of process; the court simply compared the requirements of the two different causes of action. Moreover, it is also apparent that the *Brandow* court took the holding in *Bonney* regarding malicious prosecution and improperly "grafted" it into the requirements for abuse of process. Accordingly, we refuse to follow *Brandow*.

It is clear that the majority of the courts that have analyzed abuse of process claims have consistently followed the same analytical framework and inquiry, regardless of whether there has been an arrest or seizure of property. The facts of each case are analyzed to determine whether process has been used to accomplish some result beyond the purview of the process or to compel the party against whom it is used to do some collateral thing that he or she could not legally be compelled to do. *Neurosurgery*, 339 Ill. App. 3d at 183; *Community National Bank in Monmouth v. McCrery*, 156 Ill. App. 3d 580, 583 (1987). Accordingly, we compare plaintiff's complaint to other cases and determine whether the allegations satisfy the well-established two-pronged test for abuse of process.

In *Shatz v. Paul*, 7 Ill. App. 2d 223 (1955), the court found an abuse of process in the defendants' repeated and successive use of the writ of *capias ad respondendum* for the purpose of compelling the plaintiff to borrow money from friends or relatives and pledge their

personal credit to pay corporate debts. The defendants knew that the plaintiff had no funds to pay the debts and that the plaintiff was subjected to hardship in securing the monies for such payments. The complaint also alleged that the plaintiff had a good and meritorious defense to all the causes of action brought or threatened by the defendants, in that an accord and satisfaction had been reached by the parties in the underlying suit. There, the plaintiff had been arrested four times and the defendants threatened additional arrests upon six more invoices they held. *Shatz*, 7 Ill. App. 2d at 237.

In *Executive Commercial Services, Ltd. v. Daskalakis*, 74 Ill. App. 3d 760 (1979), the plaintiff successfully pleaded abuse of process where the defendant had used a writ of *ne exeat*, *i.e.*, having the plaintiff arrested, in order to extract money from the codefendants. Most notably, the plaintiff was not involved in the lawsuit between the defendants and was arrested only as a means of forcing the codefendants into a position favorable to the defendant who sought the writ of *ne exeat*.

In *Dixon v. Smith-Wallace Shoe Co.*, 283 Ill. 234 (1918), however, the supreme court held that the mere institution of a civil suit, the taking of judgment in the same, and the regular issuance of process for the collection of the judgment, in the usual and ordinary manner, was not an abuse of process. *Dixon*, 283 Ill. at 242. The court held that, even if the attachment was maliciously issued and levied upon lands and a judgment in attachment and order of sale were obtained without reasonable or probable cause and without actual notice to the defendant, there would not be an abuse of process because the attachment suit was regularly begun and prosecuted to a conclusion for the sole purpose of collecting an amount justly due the defendant. *Dixon*, 283 Ill. at 242.

Similarly, in *Erlich v. Lopin-Erlich*, 195 Ill. App. 3d 537 (1990), the court found that the temporary restraining order (TRO) obtained by the plaintiff's wife to block the plaintiff from disposing of marital assets during their divorce proceeding was not an abuse of process. The court held that the use of the process, *i.e.*, obtaining the TRO, was not extraneous to the purpose of the proceeding. Thus, the TRO was obtained in the regular prosecution of the proceeding. *Erlich*, 195 Ill. App. 3d at 539.

Plaintiff asserts that he pled sufficient facts to show that defendants fraudulently and maliciously manipulated the process, satisfying the second element of the tort. He claims that the abuse of process lies in what defendants did after the court issued the subpoenas and they filed the petition for rule to show cause; that the abuse lies in the *ex parte* procurement of the writ of attachment and the issuance of the arrest warrant at a time when discovery was stayed in Colorado. We disagree.

Here, the original "process" used, the institution of the suit, was intended to obtain discovery to aid defendants in the Colorado action. At the time, none of the Kumar Entities was named a defendant in the Colorado action. Thus, it appeared that the discovery subpoenas issued to the Kumar Entities were simply proper requests seeking information that might have been relevant to Woodward's claims in the underlying suit against Viktron. However, the mere institution of proceedings, even with a malicious motive, does not in and of itself constitute abuse of process, the second element being the gravamen of the offense. *Neurosurgery*, 339 Ill. App. 3d at 183.

■ Furthermore, as is evident from the record, the failure to obey the discovery orders occurred well before the Kumar Entities were added as defendants in the Colorado action. The trial court ruled that the Colorado action did not stay the action here, counsel for the Kumar Entities knew that an attachment order was issued, and it was not issued *ex parte*. The Kumar Entities had plenty of time to comply with discovery orders, bring a motion to quash, or file for a protective order. Instead, they disobeyed the court orders and were ultimately held in contempt of court. Moreover, plaintiff was properly held personally responsible for their failure to comply with the orders. See *Reynolds*, 350 Ill. at 16. Initiating the suit and procuring the writ of attachment and arrest warrant to obtain compliance with the discovery orders were acts that were not extraneous to the purpose of the proceedings, but were proper in the regular course of the suit. As plaintiff's complaint does not allege that the process was abused in order to coerce plaintiff to do some collateral thing or to accomplish some improper ulterior purpose, it is deficient in substance. As such, the complaint fails to state a cause of action for abuse of process and was properly dismissed by the trial court.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

KAPALA and GILLERAN JOHNSON, JJ., concur.