2021 IL App (1st) 200139-U

FOURTH DIVISION
June 30, 2021

No. 1-20-0139

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| SWEPORTS, LTD., UMF CORPORATION, and GEORGE CLARKE, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 18 L 5737 |
| LEE ABRAMS, TINA WHITE, MICHAEL O'ROURKE, MICHAEL MOODY, O'ROURKE & MOODY, an Illinois law partnership, JOHN DORE, ANDREW CHENELLE, and NEAL WOLF, | ) ) ) ) ) ) | Honorable Thomas R. Mulroy, Jr., Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the judgment of the circuit court of Cook County dismissing the plaintiffs' claims for abuse of process, tortious interference with prospective economic advantage, prima facie tortious conduct, and conspiracy.

¶ 2    Plaintiffs Sweports Ltd. (Sweports), UMF Corporation (UMF), and George Clarke

(Clarke) filed a complaint in the circuit court of Cook County against defendants Lee Abrams

(Abrams), Tina White (White), Michael O'Rourke (O'Rourke), Michael Moody (Moody),

O'Rourke & Moody, an Illinois law partnership (O&M), John Dore (Dore), Andrew Chenelle (Chenelle),[1] and Neal Wolf (Wolf). The complaint alleged, in part, that the defendants engaged in vexatious litigation for the purpose of forcing the liquidation of Sweports, obtaining control of UMF, and coercing Clarke out of control of the companies. The plaintiffs asserted claims for abuse of process (count I), tortious interference with prospective economic advantage (count II), prima facie tortious conduct (count III), and conspiracy (count IV).

¶ 3    Three different sets of defendants filed motions to dismiss: (a) O'Rourke, Moody, O&M, and Dore (the O'Rourke defendants); (b) Abrams and White; and (c) Wolf. The circuit court ultimately granted the motions to dismiss with prejudice under section 2-619(a)(4) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(4) (West 2018)) based on *res judicata* and under section 2-615 of the Code for failure to state a cause of action upon which relief may be granted (735 ILCS 5/2-615 (West 2018)). The defendants subsequently sought sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). The circuit court denied the requests for sanctions except as to White, who was awarded a total amount of $26,641.13. On appeal, the plaintiffs contend that the circuit court erred in dismissing their complaint and awarding Rule 137 sanctions to White. During this appeal, Wolf settled and was dismissed.[2] For the following reasons, we affirm.

¶ 4                          I. BACKGROUND

¶ 5                          A. Complaint

¶ 6    On June 1, 2018, the plaintiffs filed a complaint against the defendants which alleged, in

----

[1] Although Chenelle is listed as an appellee in the briefs, it does not appear that he was served with a summons or that he otherwise participated in the circuit court proceedings. We thus need not discuss in detail the claims against him.

[2] In light of Wolf's settlement and dismissal from the appeal, we need not discuss in detail the claims against him.

part, as follows.

¶ 7    Sweports, a Delaware corporation, is a holding company that owns intellectual property rights for cleaning products. Sweports owns a majority interest in UMF, an Illinois corporation, which uses the technology licensed from Sweports to manufacture cleaning products sold primarily in the healthcare and hospitality industries. Clarke is the founder and a board member of both companies; he is also the chief executive officer of UMF and the majority stockholder and president of Sweports.

¶ 8                          *1. Allegations of Corporate Maneuvering*

¶ 9    In 2006, Sweports retained the law firm of O&M to defend against a takeover attempt of Sweports/UMF by a lender, Sandbox Industries LLC (Sandbox). After O&M negotiated a settlement with Sandbox, UMF needed capital to fund the settlement. O&M's principals – attorneys O'Rourke and Moody – told Clarke that they could raise the necessary funds through their friends and their relationship with their client, American Chartered Bank. The bank declined to provide non-recourse financing to Sweports or UMF but agreed to extend a loan guaranteed by wealthy individuals.

¶ 10   O'Rourke and Moody structured a financing transaction whereby the bank provided a $500,000 loan, which was guaranteed by O'Rourke, Moody, Dore, Chenelle, and Abrams. Pursuant to a loan guaranty and stock purchase agreement, each guarantor received, in part, a 2% equity interest in Sweports from Clarke, plus an option to buy an additional 1% equity interest from Sweports for an additional $100,000. Three of the guarantors – O'Rourke, Moody, and Dore – exercised the option to acquire another 1% of Sweports stock, raising their combined ownership to 9%. O'Rourke and Moody raised approximately $1.3 million for Sweports.

¶ 11   By December 2006, O&M claimed that Sweports owed a substantial amount of legal

fees. Sweports and O&M agreed to convert $107,500 in alleged fees into 1.25% of Sweports equity; Clarke also appointed O'Rourke and Dore to the Sweports board. O&M subsequently drafted a written consent which limited Clarke's ability to unilaterally remove board members, and which provided broad indemnification rights under Delaware law to all directors and officers. Clarke allegedly did not understand the significance of these provisions when he executed the consent.

¶ 12    Shortly after O'Rourke and Dore became directors of Sweports, O'Rourke started discussing a new deal with Sandbox, which involved forming a new entity to market consumer products using Sweports' technology. According to the complaint, Sandbox and O'Rourke hoped to prevent Clarke from having any involvement in the post-transaction entity. In early 2007, Clarke became suspicious that O'Rourke, Moody, and Dore were plotting with Sandbox against him. After O'Rourke, Dore, and others voted in favor of the Sandbox deal, Clarke executed and circulated a document entitled an "informal action" for UMF in April 2007, whereby Clarke reasserted legal and physical control over the companies' offices and their properties. In an "informal action" for Sweports in June 2007, Clarke rescinded the transactions initiated by O'Rourke, Moody, and Dore, and rescinded all stock rights and certifications granted or issued to O&M, as well as O'Rourke, Moody, Dore, and others. According to the complaint, the UMF and Sweports informal actions effectively thwarted the scheme of O'Rourke, Moody, and Dore to take control of the companies and to exclude Clarke.

¶ 13                    *2. Allegations of Vexatious Litigation*

¶ 14    After their "corporate maneuvers" were blocked, the defendants then allegedly embarked on a new scheme to take control of Sweports and UMF and to exclude Clarke through vexatious litigation. According to the complaint, the purpose of the litigation was to seek inflated amounts

of damages, to impose the burden of legal fees on Sweports, and to use the existence of the litigation to prevent Sweports and UMF from raising adequate capital to pay legitimate debt and to fully utilize their business expectancies.

¶ 15    Although the complaint is unclear regarding the nature and scope of the purportedly vexatious litigation described therein, the legal proceedings at issue appear to include the following.

¶ 16                      a.  Illinois Circuit Court Litigation Initiated in 2007

¶ 17    O'Rourke, Moody, Dore, and Chenelle – represented by O&M – filed an action against Sweports and Clarke in the circuit court of Cook County (2007 L 012136).  The action included claims for breach of the guaranty agreement, breach of fiduciary duty, and conversion.  This lawsuit was consolidated with a separate action brought by the same plaintiffs against Sweports (2007 L 013237), which alleged that Sweports had defaulted under the parties' note.  The plaintiffs subsequently sought a declaratory judgment regarding the effectiveness of the Sweports informal action, a determination that Sweports had deprived them of their shares, and a judicial valuation of their shares.  The plaintiffs amended the complaint to assert only claims for breach of contract, not for a declaratory judgment regarding the informal action.

¶ 18    The plaintiffs therein – joined by Abrams, who had been added as a necessary party – filed a motion for summary judgment.  The circuit court granted their motion as to the issue of liability, ruling that Sweports had failed to pay the amounts due under the note and had breached the guaranty agreement by rescinding the stock.  The circuit court subsequently awarded $397,520.16 on the note claim, plus $125,780.75 in legal fees under the terms of the note.  In 2012, the circuit court held a stock valuation trial, wherein attorney Wolf represented Moody.  The jury awarded damages of $345,000 each to O'Rourke, Moody, and Dore, and $230,000 to

Chenelle. The final judgment was entered in March 2012, and Sweports filed an appeal.

¶ 19                          b. Bankruptcy and Related Proceedings

¶ 20    In April 2012, involuntary bankruptcy proceedings were commenced against Sweports in the United States Bankruptcy Court for the Northern District of Illinois by creditors O'Rourke, Moody, and Dore. An unsecured creditors committee (UCC) was formed; the UCC was represented by Wolf and its members included O'Rourke, Moody, Dore, and Abrams. According to the complaint in the instant proceeding, various creditors – Abrams, O'Rourke, Moody, Dore, and Chenelle – filed inflated and/or duplicative proofs of claim. Although the UCC investigated potential derivative claims against Clarke for breach of fiduciary duty, no such claim was filed.

¶ 21    Sweports and the UCC filed competing plans of reorganization, both of which were rejected by the bankruptcy court in March 2014. The bankruptcy was dismissed in April 2014, allegedly since the creditors wished to pursue their state court remedies, including the immediate turnover of Sweports' assets. Attorney Wolf allegedly wrongfully registered a non-final interim fee award previously entered by the bankruptcy court as a final judgment in Illinois (2014 L 050380) and then issued a citation against Sweports which created a lien on its assets. Wolf also attempted to collect a fee award in a supplementary proceeding (2015 L 050717).

¶ 22              c. Illinois Appellate Court Decision and Proceedings on Remand

¶ 23    On appeal from the circuit court proceeding initiated in 2007 (discussed above), the Illinois Appellate Court affirmed the judgment on the breach of the note, but reversed the judgments in favor of O'Rourke, Moody, Dore, and Chenelle for breach of the guaranty agreement and remanded the case for a new trial. After the remand, the plaintiffs therein moved to recover additional attorney fees in an allegedly inflated amount. The circuit court ultimately

awarded a total of approximately $196,000 in attorney fees, which Sweports paid.

¶ 24                                    d. Delaware Indemnity Action

¶ 25    In December 2015, O'Rourke, Moody, and Dore filed an indemnification action in

Delaware.  Although the plaintiffs therein initially represented that they had incurred expenses in

excess of $750,000, the amount eventually increased to $1,258,821.09.  These amounts

substantially exceeded the amounts which had been referenced in their proofs of claim in the

bankruptcy proceedings, as well as other court filings.  According to the complaint in the instant

action, the substantial difference in the amounts was based on O'Rourke and Moody's fraudulent

alteration of their time records for the purpose of inflating their claims against Sweports.  In

awarding the reduced amount of $242,492.50 in indemnity, the Delaware court found that the

attorneys had "fabricated new entries to gross up the size of their recovery, and they altered other

entries to make them appear to fall within the scope of the indemnification[.]"

¶ 26                                    e. Malicious Prosecution Action

¶ 27     In October 2015, Chenelle – through his attorneys O&M – filed an action for malicious

prosecution against Sweports, UMF, Clarke, and others in the circuit court of Cook County

(2015 L 010294), and the defendants filed a motion to dismiss.  Prior to any hearing on the

motion to dismiss, Chenelle voluntarily dismissed the action and did not refile his claim.

¶ 28                                    f. Shareholder Derivative Action

¶ 29     In November 2015, Abrams and White[3] – as individuals derivatively on behalf of

Sweports and UMF – filed a verified complaint for breach of fiduciary duty and other relief in

the circuit court of Cook County (2015 CH 16252) against Clarke and another defendant.  The

_____

    [3] White's husband was Abrams' law partner and a close friend of Clarke.  Since her husband's passing in 2006, White has owned his minority interest in Sweports.  See *Abrams v. Clarke*, 2020 IL App (1st) 191996-U, ¶ 7 n.2.

claims asserted in the derivative action were allegedly identical to claims which were investigated by the UCC (of which Abrams was a member) but not filed in the bankruptcy.

¶ 30                                   g.  Breach of Contract Action

¶ 31    O&M filed an action against Sweports in the circuit court of Cook County (2007 CH 15081, later renumbered as 2014 L 005983), seeking payment for legal services allegedly rendered to Sweports.  O&M "vexatiously sought to appoint a receiver for Sweports" so as to oust Clarke from control of UMF and to prevent Sweports and UMF from paying a certain secured creditor.  The action was resolved by a partial settlement; Sweports appealed the dismissal of its counterclaims therein.

¶ 32                          *3. Additional Allegations in the Instant Litigation*

¶ 33    Returning to the instant complaint, the plaintiffs alleged that as a result of the multiplicity of lawsuits filed by the defendants and the wrongful encumbrances placed on Sweports' assets, UMF was unable to acquire financing or increased credit.  According to the complaint, at least three lenders – First Bank, Chase, and Cole Taylor Bank – refused to complete the establishment of expected credit facilities due to the pendency and magnitude of the claims against Sweports, UMF, and Clarke.  The complaint further alleged that O'Rourke, Moody, and Wolf "intentionally communicated the existence of the lawsuits to UMF's lender, First Bank," and that the litigation and encumbrances caused First Bank to reduce UMF's line of credit.  The plaintiff alleged that they were damaged by the loss of business and expenditure of significant legal fees.

¶ 34    Count I (abuse of process), count II (tortious interference with prospective economic advantage), and count III (prima facie tortious conduct) were each brought against all of the defendants, except White.  Count IV (conspiracy) was brought against all of the defendants, including White.

¶ 35                          B.  Motions to Dismiss and Ruling

¶ 36    As noted above, the O'Rourke defendants and Abrams/White filed motions to dismiss the complaint.  The O'Rourke defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)), raising five primary arguments: (a) a pending appeal of a dismissal of certain counterclaims justified dismissal under section 2-619(a)(3) (735 ILCS 5/2-619(a)(3) (West 2018)); (b) the complaint was barred by *res judicata* and should be dismissed under section 2-619(a)(4) (735 ILCS 5/2-619(a)(4) (West 2018)), as the claims have already been adjudicated (*e.g.*, *UMF Corp. v. Dore*, 2013 IL App (1st) 122686-U; *Dore v. Sweports, Ltd.*, 2014 IL App (1st) 121980-U); (c) the complaint was time-barred under the applicable statutes of limitations (*i.e.*, 735 ILCS 5/13-202 (West 2018)); 735 ILCS 5/13-205 (West 2018)); (d) none of the counts stated a cause of action and thus dismissal was proper under section 2-615 (735 ILCS 5/2-615 (West 2018)); and (e) dismissal was warranted under section 2-603(a) (735 ILCS 5/2-603(a) (West 2018)) for failure to contain a plain and concise statement of the cause of action.  Abrams and White advanced certain similar arguments in support of dismissal and the plaintiffs filed responses to the motions.

¶ 37    In an order entered on May 10, 2019, the circuit court dismissed the claims with prejudice under section 2-619(a)(4), determining that they "all arise out of the same set of operative facts, were brought by the same parties with the same legal interests, and the claims brought using these facts have all been dismissed with prejudice with leave to amend denied and/or affirmed by the Appellate Court."  In the alternative, the circuit court also dismissed the claims with prejudice under section 2-615 for failure to state a cause of action.

¶ 38                          C.  Motions for Sanctions and Ruling

¶ 39    The defendants filed motions for sanctions pursuant to Illinois Supreme Court Rule 137

(eff. Jan. 1, 2018). In an order entered on September 24, 2019, the circuit court denied sanctions to all of the movants except White. The circuit court found the complaint to be meritless and frivolous vis-à-vis White, as she was named as a defendant only in the conspiracy count (count IV) – which is not an independent tort – and the plaintiffs "did not allege a tortious act, and did not name White in any other claim in the [c]omplaint." After considering her prove-up materials, the circuit court entered an order on December 20, 2019, directing the plaintiffs to pay $26,641.13 in fees and costs to White's counsel. The plaintiffs filed a timely notice of appeal on January 17, 2020.

¶ 40                                   II. ANALYSIS

¶ 41    The plaintiffs advance two primary arguments on appeal. First, they argue that the circuit court erroneously dismissed their complaint under section 2-619(a)(4) of the Code (735 ILCS 5/2-619(a)(4) (West 2018)) based on *res judicata*. Among other things, the defendants assert that the circuit court incorrectly found that their claims were the subject of final judgments in prior litigation. Second, the plaintiffs contend that the circuit court erred in dismissing each of the four counts of the complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)) for failure to state a cause of action upon which relief may be granted.

¶ 42    For the reasons discussed below, we conclude that the dismissal was proper under section 2-615 and therefore need not address the parties' arguments as to section 2-619(a)(4).

¶ 43                      A. Dismissal Under Section 2-615 of the Code

¶ 44    A motion to dismiss under section 2-615 challenges the legal sufficiency of the complaint based on defects apparent on its face. *Doe v. Coe*, 2019 IL 123521, ¶ 31. A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved which would entitle the plaintiff to recovery. *Id.*

¶ 45    Illinois is a fact-pleading jurisdiction. *Id.* ¶ 32. When ruling on a section 2-615 motion to dismiss, a circuit court may consider only the facts apparent from the face of the pleadings, matters of which the court may take judicial notice, and judicial admissions in the record. *Estate of Powell ex rel. Harris v. John C. Wunsch, P.C.*, 2013 IL App (1st) 121854, ¶ 15, *aff'd* 2014 IL 115997. A court must accept as true all well-pleaded facts and all reasonable inferences which may be drawn from those facts. *Id.* "Mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand a section 2-615 motion to dismiss." *Id.* Accord *Illinois State Bar Ass'n Mutual Insurance Co. v. Cavenagh*, 2012 IL App (1st) 111810, ¶ 13. See also *Hough v. Kalousek*, 279 Ill. App. 3d 855, 859 (1996) (noting that although pleadings are to be liberally construed, a complaint must state a cause of action through the allegation of facts, and the failure to do so cannot be aided by any principle of liberal construction). "The plaintiff is not required to prove his or her case but must allege sufficient facts to state all the elements of the asserted cause of action." *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (2004).

¶ 46    In reviewing a circuit court's ruling on a section 2-615 motion to dismiss, we apply a *de novo* standard of review. *Dawson v. City of Geneseo*, 2018 IL App (3d) 170625, ¶ 11. "When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform." *Id.* The appellate court may affirm a circuit court's grant of a section 2-615 motion to dismiss on any basis supported by the record. *Id.*; *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24 (noting that "we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct").

¶ 47                                    B. Abuse of Process

¶ 48    Count I of the complaint asserted a claim for abuse of process. The plaintiffs alleged that

the defendants initiated the lawsuits and "issued the process" described in the complaint for the "ulterior purpose of gaining control of UMF and Sweports" and depriving Clarke of control of the companies by: (a) wrongfully attempting to obtain exaggerated damage awards and inflated attorney fees; (b) improperly encumbering Sweports' assets by initiating supplementary proceedings in the absence of final judgments; (c) forcing Sweports and UMF to incur substantial attorney fees to defend these wrongful actions; and (d) interfering with UMF's ability to acquire necessary financing by deterring potential lenders and investors by naming the plaintiffs in lawsuits which sought inflated damages. In dismissing this claim, the circuit court found that the allegedly improper litigation resulted in judgments which were paid by the plaintiffs, and no abuse of process was raised by the plaintiffs in these prior cases. The circuit court further found that the plaintiffs did not allege any acts committed which were "not proper in the regular prosecution of legal proceedings."

¶ 49    "Abuse of process is the misuse of legal process to accomplish some purpose outside the scope of the process itself." *Neurosurgery and Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 182 (2003). See also *Dixon v. Smith-Wallace Shoe Co.*, 283 Ill. 234, 242 (1918) (noting that a claim for abuse of process "means the perversion of it; *i.e.*, accomplishing some illegal object or purpose for which such process was not legally intended"). The two distinct elements of an abuse of process claim are: (1) the existence of an ulterior motive or purpose; and (2) some act in the use of the process that is not proper in the regular course of proceedings. *Kumar*, 354 Ill. App. 3d at 165; *Neurosurgery and Spine Surgery, S.C.*, 339 Ill. App. 3d at 183. As the tort of abuse of process is not favored under Illinois law, its elements must be strictly construed. *Id*. See also *Erlich v. Lopin-Erlich*, 195 Ill. App. 3d 537, 539 (1990).

¶ 50    To satisfy the first element, a plaintiff must plead facts which demonstrate that the

defendant instituted the proceedings for an improper purpose, such as intimidation, extortion, or embarrassment. *Kumar*, 354 Ill. App. 3d at 165; *Neurosurgery and Spine Surgery, S.C.*, 339 Ill. App. 3d at 183. "However, the mere institution of a suit for an improper purpose does not itself constitute an abuse of process, the second element being the gravamen of the offense." *Id.* See also *McGrew v. Heinold Commodities, Inc.*, 147 Ill. App. 3d 104, 112 (1986) (stating that "[t]he mere existence of an ulterior motive in performing an otherwise proper act does not constitute abuse of process").

¶ 51    To satisfy the second element, a plaintiff must plead facts which establish a misapplication of process. *Neurosurgery and Spine Surgery, S.C.*, 339 Ill. App. 3d at 183. In other words, the plaintiff must demonstrate that the process was used to accomplish some result which is "beyond the purview of the process." *Kumar*, 354 Ill. App. 3d at 165; *Neurosurgery and Spine Surgery, S.C.*, 339 Ill. App. 3d at 183. See *Community National Bank in Monmouth v. McCrery*, 156 Ill. App. 3d 580, 583 (1987) (noting that the second element is satisfied where the process has been used to accomplish a result that is beyond the purview of the process "or which compels the party against whom it is used to do some collateral thing which he could not legally be compelled to do"). "When process is used only for its intended purpose, there has been no misapplication of process." *Neurosurgery and Spine Surgery, S.C.*, 339 Ill. App. 3d at 183.

¶ 52    The complaint in the instant case did not allege facts that establish a misapplication of process. The plaintiffs' primary contention is that filing multiple lawsuits is itself an abuse of process. The institution of an action, however, is not a process of the court. *Community National Bank in Monmouth*, 156 Ill. App. 3d at 583. "Process" has been defined as any means used by the court to acquire or exercise its jurisdiction over a person or over specific property. *Neurosurgery and Spine Surgery, S.C.*, 339 Ill. App. 3d at 183. "Process is issued by the court,

under its official seal and must be distinguished from pleadings, which are created and filed by the litigants." *Doyle v. Shlensky*, 120 Ill. App. 3d 807, 816 (1983). Accord *Community National Bank in Monmouth*, 156 Ill. App. 3d at 583. For example, the plaintiffs' allegation that Abrams knowingly filed a time-barred derivative action is based on a "pleading" – not a court "process" – and is thus outside of the scope of an abuse of process claim.

¶ 53    The defendants' other conduct as alleged in the complaint – *e.g.*, based on the proofs of claim filed by the defendants in the bankruptcy proceeding – also does not constitute an abuse of process as such conduct is consistent with "very purpose for which the process" (*e.g.*, bankruptcy) was created. *McGrew*, 147 Ill. App. 3d at 111. See *Kumar*, 354 Ill. App. 3d at 170 (observing that initiating the underlying lawsuit and procuring a writ of attachment and an arrest warrant to obtain compliance with certain discovery orders were "acts that were not extraneous to the purpose of the proceedings, but were proper in the regular course of the suit"); *Erlich*, 195 Ill. App. 3d at 539 (noting that even if the parties made false representations to the court to obtain a temporary restraining order (TRO), the "seeking and obtaining of a TRO was done in the regular prosecution" of the marital dissolution proceeding and thus the complaint for abuse of process was properly dismissed). While the plaintiffs alleged that the defendants misstated or exaggerated the underlying debt at issue – for example, by filing inflated proofs of claim – the validity of the underlying debt is "simply irrelevant to an abuse of process claim." *McGrew*, 147 Ill. App. 3d at 111.

¶ 54    Although not a required element of the claim, we note that a cause of action for abuse of process in Illinois generally has been based on an arrest or a seizure of property. *Kumar*, 354 Ill. App. 3d at 165 (noting that "[w]hile we have found no Illinois case *** that allows an abuse of process claim in the absence of an arrest or physical seizure of property, we agree with plaintiff

that an arrest is not a required element of abuse of process"). See also *Withall v. Capitol Federal Savings of America*, 155 Ill. App. 3d 537, 544 (1987) (noting that plaintiffs asserting a cause of action for an abuse of process generally are required to have suffered an actual arrest or seizure of property); *Ewert v. Wieboldt Stores, Inc.*, 38 Ill. App. 3d 42, 43-44 (1976) (same). Even if we accept the plaintiffs' characterization of the involuntary bankruptcy case as a "seizure" of Sweports' assets, the complaint failed to allege any act by the defendants in the use of legal process which was not proper in the prosecution of their actions.

¶ 55    In sum, "the tort of abuse of process is a very narrow tort." *Neurosurgery and Spine Surgery, S.C.*, 339 Ill. App. 3d at 184. As count I of the complaint did not allege sufficient facts to satisfy the elements of abuse of process, the circuit court did not err in dismissing this count with prejudice.

¶ 56         C.  Tortious Interference With Prospective Economic Advantage

¶ 57    Count II of the complaint asserts a claim for tortious interference with prospective economic advantage. The plaintiffs alleged that UMF had a reasonable expectancy of entering into financing arrangements with various lenders, including First Bank, Chase, and Cole Taylor Bank, as evidenced by letters of intent. According to the complaint, the defendants had knowledge of these expectancies as they were disclosed in discovery in the various lawsuits and the bankruptcy proceeding described herein. The plaintiffs alleged that the defendants intentionally interfered with these relationships by "seeking exaggerated damages based upon fraudulently contrived claims while knowing that the prospective investors and lenders would not do business with UMF, Sweports and Clarke under the cloud of the multiplicity and magnitude of such lawsuits." The plaintiffs alleged that such interference caused Sweports and UMF to fail to secure the necessary financing to pay their legitimate debts and to fund the

expansion of UMF's business, which in turn resulted in lost business for UMF and lost dividends for Sweports. The plaintiffs sought the imposition of punitive damages based on the defendants' "malicious and willful" conduct. In dismissing count II, the circuit court found that: (a) the "interference" was litigation which the defendants were "justified or privileged in bringing"; (b) there were no allegations that the defendants had knowledge of the plaintiffs' relationship with any of the listed financial institutions or had contact with them; and (c) the allegations of actual malice were conclusory and not supported by the facts.

¶ 58    The elements of a claim for tortious interference with a business expectancy include: (a) a reasonable expectancy of entering into a valid business relationship; (b) the defendant's knowledge of the expectancy; (c) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (d) damages resulting from the interference. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 862 (2008). "A cause of action for intentional interference with a business expectancy need not be based on an enforceable contract that is interfered with; rather, it is the interference with the relationship that creates the actionable tort." *Id.*

¶ 59    A defendant's interference must be directed toward a third party. *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 887-88 (1997). The generic allegation that the mere existence of litigation interfered with the plaintiffs' business expectancies is thus inadequate. Despite the circuit court's finding to the contrary, however, we observe that the complaint alleged that certain defendants (O'Rourke, Moody, and Wolf) "intentionally communicated the existence of the lawsuits to UMF's lender, First Bank." It is insufficient, however, for a plaintiff to merely show that the defendant interfered with a business expectancy. "Rather, '[t]he element of 'purposeful' or 'intentional' interference refers to some impropriety

committed by the defendant in interfering with the plaintiff's expectancy." *Chicago's Pizza, Inc.*, 384 Ill. App. 3d at 863 (internal citations omitted). The plaintiffs must prove that the defendants acted intentionally with the aim of injuring the plaintiffs' expectancy. *Id.* Given the absence of any allegations regarding the nature or timing of the alleged communication, the complaint is inadequate. *Douglas Theater Corp.*, 288 Ill. App. 3d at 886 (noting that "[o]nly well-pled allegations of the complaint must be taken as true, and this court need not draw unwarranted or unreasonable inferences in order to sustain a pleading").

¶ 60     A plaintiff can state a cause of action for tortious interference with prospective economic advantage against a party whose conduct is justified as the result of a qualified privilege if the plaintiff can set forth factual allegations from which actual malice can be inferred. *Philip I. Mappa Interests, Ltd. v. Kendle*, 196 Ill. App. 3d 703, 710 (1990). As the circuit court herein observed, the "interference" in the instant case is based on litigation which the defendants were justified or privileged in initiating and pursuing. "Where the defendant acts under a privilege or with justification, it is plaintiff's burden to plead malice or lack of justification to satisfy the elements of tortious interference with economic advantage." *Schuler v. Abbott Laboratories*, 265 Ill. App. 3d 991, 995 (1993). A bare allegation of malice, without factual support, does not overcome a privilege. *Id.* at 996. "The evidence must establish that defendant had acted with a desire to harm which was unrelated to the interest he was presumably seeking to protect by bringing about the breach." *Philip I. Mappa Interests, Ltd.*, 196 Ill. App. 3d at 708. Simply put, the allegations of malice in the complaint herein were conclusory and not supported by facts.

¶ 61     For the foregoing reasons, we affirm the circuit court's dismissal of count II of the complaint with prejudice.

¶ 62                    D.  Prima Facie Tortious Conduct

¶ 63    In count III, entitled "Prima Facie Tortious Conduct," the plaintiffs alleged that the defendants "knowingly and intentionally injured Sweports, UMF and Clarke without excuse." As discussed below, we agree with the conclusion of the circuit court that "prima facie tort" – a sort of "catch-all" cause of action for an intentional and unjustified act which results in injury to the plaintiff – is not a recognized cause of action in Illinois.

¶ 64    In response to the defendants' arguments regarding count III, the plaintiffs relied primarily on an article in a law journal by Kenneth J. Vandevelde – *The Modern Prima Facie Tort Doctrine*, 79 Ky. L.J. 519 (Spring 1990/1991) – in support of their contention that prima facie tort is a valid cause of action in Illinois.  According to the article, the prima facie tort doctrine "posits a general theory of intentional tort under which the intentional infliction of injury without justification is actionable." *Id.* at 519.  Citing two cases – *Lowe Foundation v. Northern Trust Co.*, 342 Ill. App. 379 (1951), and *Pendleton v. Time, Inc.*, 339 Ill. App. 188 (1949) – the author opined that Illinois has "recognized" the prima facie tort doctrine.

¶ 65    In *Lowe Foundation*, which involved a challenge to a holographic will, the appellate court observed that "the rule which gives a right of action for the malicious and wrongful interference with the making of a contract applied to such interference with the making of a will." *Lowe Foundation*, 342 Ill. App. at 387.  *Pendleton* addressed whether a painter was entitled to damages based on the publication of false statements regarding one of his paintings. *Pendleton*, 339 Ill. App. at 190.  The *Pendleton* appellate court found that "[w]hen, as alleged in the complaint, this injury to plaintiff's property right was willfully, maliciously, and intentionally committed by defendant, there must be a remedy afforded for this wrong to the plaintiff." *Id.* at 195.  While each of the foregoing cases contemplated a potential recovery for the plaintiff for an

injury intentionally committed by the defendant, neither uses nor references the term "prima facie tort." We acknowledge that the absence of the term "prima facie tort" or similar terminology in *Lowe* and *Pendleton* is not dispositive. *E.g.*, *United Airlines, Inc. v. City of Chicago*, 2011 IL App (1st) 102299, ¶ 9 (noting that the title a plaintiff employs to describe his cause of action is not dispositive as to the true nature of that action). See also *Aebischer v. Zobrist*, 56 Ill. App. 3d 151, 154 (1977). Neither case, however, expressly recognized or implicitly suggested a stand-alone cause of action for "prima facie tort," as the plaintiffs contend. The parties have not cited, and we have not located, any Illinois case which affirmatively recognizes prima facie tort.

¶ 66    We further note that multiple federal court decisions have observed that prima facie tort has not been recognized as a cause of action in Illinois. *E.g.*, *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 686-87 (7th Cir. 2014), *reh'g denied*, 769 F.3d 535 (7th Cir. 2014); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1042-43 (7th Cir. 1999); *Barry Gilberg, Ltd. v. Craftex Corp.*, 665 F. Supp. 585, 596 (N.D. Ill. 1987). Although not binding on Illinois courts, the foregoing cases may be considered persuasive authority. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30.

¶ 67    We decline to expand existing jurisprudence to include prima facie tort as a cognizable cause of action under Illinois law. We thus affirm the dismissal with prejudice of count III of the complaint.

¶ 68                                  E.  Conspiracy

¶ 69    Count IV of the complaint – filed against all of the defendants, including White – asserted a claim for conspiracy. Civil conspiracy is an intentional tort and requires proof that a defendant knowingly and voluntarily participated in a common scheme to commit an unlawful

act or a lawful act in an unlawful manner. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999). The complaint alleged that the defendants "comprise a group of parties, many of whom are attorneys, and are related by being represented by each other or as members of the UCC." According to the complaint, the defendants knowingly agreed to pursue vexatious litigation against the plaintiffs for the purpose of forcing the liquidation of Sweports, gaining control over UMF, and forcing Clarke out of control over the companies. In dismissing this count of the complaint, the circuit court found that there were no allegations of any concerted action for either an unlawful purpose or a lawful purpose by unlawful means. The circuit court further found that there were no facts alleging "conduct by a co-conspirator which would constitute an overt tortious or unlawful act."

¶ 70    The elements of a civil conspiracy under Illinois law are: (a) a combination of two or more persons, (b) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (c) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004). "The function of a conspiracy claim is to extend tort liability from the active wrongdoer to wrongdoers who may have only planned, assisted, or encouraged the active wrongdoer." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 923 (2007).

¶ 71    In the instant case, the allegations in the complaint that the parties "entered into an agreement to gain control of Sweports and UMF" are inadequate. The complaint must contain more than the conclusion that there was a conspiracy; it must allege specific facts from which the existence of a conspiracy may properly be inferred. *Fritz*, 209 Ill. 2d at 318. See also *Reuter v. MasterCard International Inc.*, 397 Ill. App. 3d 915, 928 (2010) (providing that "[c]onclusory allegations that the defendants agreed with others to achieve some illicit purpose are not

sufficient"); *Redelmann*, 375 Ill. App. 3d at 923 (noting that the mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss). Furthermore, "[m]ere knowledge of the fraudulent or illegal actions of another is also not enough to show a conspiracy." *McClure*, 188 Ill. 2d at 134.

¶ 72    The complaint not only fails to "set forth with particularity the facts and circumstances constituting the alleged conspiracy" (*Coghlan*, 2013 IL App (1st) 120891, ¶ 60), but also fails to clearly state an independent cause of action underlying the conspiracy allegations. *Cavenagh*, 2012 IL App (1st) 111810, ¶ 37.  See also *Midwest REM Enterprises, Inc. v. Noonan*, 2015 IL App (1st) 132488, ¶ 82 (where the defendant was awarded summary judgment on the three "charged torts" underlying the conspiracy claim, then "the conspiracy claim also must fail"); *Coghlan*, 2013 IL App (1st) 120891, ¶ 60 (upholding dismissal where the plaintiffs' claim for conspiracy was predicated on their claim for libel *per se*, which was properly dismissed).  To the extent that the conspiracy claim is predicated on the other three counts of the complaint (*i.e.*, abuse of process, tortious interference, or prima facie tort), the inadequacy of those counts results in the failure of the conspiracy count.  See *Cavenagh*, 2012 IL App (1st) 111810, ¶ 37.  Although the plaintiffs contend on appeal that they have a claim for "extortion" (see *Jordan v. Knafel*, 355 Ill. App. 3d 534, 540 (2005)), the complaint does not allege such an underlying cause of action in any clear or discernable manner.

¶ 73    For the foregoing reasons, the complaint failed to state a cause of action for conspiracy and was properly dismissed with prejudice pursuant to section 2-615 of the Code.

¶ 74                                      F.  Rule 137 Sanctions

¶ 75    The plaintiffs also challenge the award of sanctions to White pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018).  Rule 137 provides that the signature of an attorney or party

on a pleading, motion, or other document constitutes a certification that "to the best of his knowledge, information, and belief formed after a reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). If a pleading, motion, or other document is filed in violation of this rule, the court may impose an appropriate sanction, including reasonable attorney fees on the party, its counsel, or both. *Id.*

¶ 76    The purpose of Rule 137 is to prevent the filing of frivolous and false lawsuits. *Yunker v. Farmers Automobile Management Corp.*, 404 Ill. App. 3d 816, 824 (2010). "The rule is not intended to penalize litigants and their attorneys because they were zealous but unsuccessful in pursuing an action." *Id.* Rule 137 requires that the circuit court provide a written explanation of the reasons and basis for the imposition of any sanctions. Ill. S. Ct. R. 137(d) (eff. Jan. 1, 2018). See also *Nelson v. Chicago Park District*, 408 Ill. App. 3d 53, 68 (2011) (stating that Rule 137 "requires that the trial court provide an explanation in imposing sanctions, and that a reviewing court may only affirm the imposition of sanctions on the grounds specified by the trial court"). In concluding that the complaint against White was frivolous, the court found, in part, that the plaintiffs sued White only for conspiracy, did not allege a tortious act, and did not name White in any other claim in the complaint.

¶ 77    We review the circuit court's imposition of Rule 137 sanctions under an abuse of discretion standard. *Id.* at 67. An abuse of discretion occurs when no reasonable person could have shared the view taken by the circuit court. *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 25; *Nelson*, 408 Ill. App. 3d at 67-68. "The law is well settled that the

appellate court should give considerable deference to the court's decision to impose sanctions[.]" *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1051 (1999).

¶ 78     We find that the circuit court did not abuse its discretion in awarding sanctions to White. As the circuit court accurately observed, there were minimal references to White in the lengthy "statement of common facts" in the complaint, and she does not appear to have played a role in much of the litigation at the core of the complaint.  Her sole involvement appears to have been with respect to the derivative complaint she filed with Abrams, which was dismissed on statute of limitations grounds.  "Courts use an objective standard to determine whether the signing party made a reasonable inquiry before filing his pleadings based on the circumstances that existed at the time of filing." *Yunker*, 404 Ill. App. 3d at 824.  See also *Garlick*, 2018 IL App (2d) 171013, ¶ 45 (noting that the standard of evaluating a party's conduct under Rule 137 is "one of reasonableness under the circumstances existing at the time of the filing").  Although the dismissal of the derivative action was ultimately affirmed on appeal (*Abrams v. Clarke*, 2020 IL App (1st) 191996-U), we cannot conclude that the circuit court abused its discretion in finding the claim that White engaged in a civil conspiracy directed against the plaintiffs was frivolous.

¶ 79                              III.  CONCLUSION

¶ 80     For the reasons stated, the judgment of the circuit court of Cook County dismissing the counts of the complaint with prejudice and awarding sanctions to White is affirmed.

¶ 81     Affirmed.