NEUROSURGERY AND SPINE SURGERY, S.C., *et al.*, Plaintiffs and Counterdefendants-Appellees, v. MARY GOLDMAN, Defendant and Counterplaintiff and Third-Party Plaintiff-Appellant (Nancy Skaletsky, Third-Party Defendant-Appellee; Gregg I. Minkow *et al.*, Third-Party Defendants).

Second District   No. 2—02—0137

Opinion filed May 29, 2003.

178

Alan Rusin, of Geneva, for appellant.

Joshua G. Vincent and Gregg I. Minkow, both of Hinshaw & Culbertson, of Chicago, for appellees Neurosurgery & Spine Surgery, S.C., and Michael Rabin.

Alfred A. Spitzzeri, of Law Office of Alfred A. Spitzzeri, of Naperville, for appellee Nancy Skaletsky.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The defendant, counterplaintiff, and third-party plaintiff, Mary Goldman, appeals from the September 20, 2001, October 11, 2001, and January 29, 2002, orders of the circuit court of Du Page County dismissing her countercomplaint and third-party complaint pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2000)). On appeal, Goldman argues that her counter-complaint stated valid causes of action for abuse of process and that her third-party complaint stated a valid cause of action for fraudulent misrepresentation. We affirm.

The relevant facts are as follows. The plaintiff and counterdefendant Neurosurgery and Spine Surgery, S.C. (Neurosurgery), is an Illinois corporation that operates a medical practice in Naperville. The plaintiff and counterdefendant Michael Rabin, M.D., is a neurosurgeon and a shareholder of Neurosurgery. Goldman was a patient of Dr. Rabin's partner, Gary Skaletsky, M.D. On April 25, 1999, Goldman was hospitalized at Edward Hospital in Naperville and treated by Dr. Rabin.

On December 20, 1999, Neurosurgery and Dr. Rabin filed a defamation action against Goldman, alleging defamation *per se* and *per quod*. More specifically, the plaintiffs' complaint alleged that on October 18, 1999, Goldman had called the administrative offices of Edward Hospital for the purpose of making a complaint against Dr. Rabin. In their complaint, the plaintiffs alleged that Goldman falsely reported that Dr. Rabin had forced his way into her hospital room on April 25, 1999, while she was undressed, that Dr. Rabin examined her with the door open, allowing people passing by to see her, and that Dr. Rabin had been dismissed from the staffs of Copley and Delnor Hospitals for similar conduct. The plaintiffs alleged that Goldman knew her statements were false and that she acted with the intent to defame Dr. Rabin and his corporation. The plaintiffs also alleged that Goldman acted with malice.

On March 6, 2001, Goldman filed a third-party complaint, naming as third-party defendants: Nancy Skaletsky, the wife of Dr. Gary Skaletsky and a nurse employed by Neurosurgery; Gregg I. Minkow, the

plaintiffs' attorney; and Swarek & Associates and Hinshaw & Culbertson, law firms with which Minkow was associated. The third-party complaint alleged four counts. Count I of the third-party complaint alleged a cause of action for fraudulent misrepresentation against Nancy Skaletsky. Specifically, count I alleged, in relevant part:

"20. During the summer of 1999, Nancy Skaletsky stated to Goldman that, due to incidences similar to the April 25, 1999, incident at Edward Hospital, Rabin had been dismissed from the staffs of two hospitals.

21. At the time that Nancy Skaletsky told Goldman that Rabin had been dismissed from the staffs of two hospitals, Nancy Skaletsky knew, or should have known, this statement was false.

22. Upon information and belief, Nancy Skaletsky made the false statement to Goldman for the purpose of Goldman relying upon such statement and inducing her to republish such false statement to third parties, including Edward Hospital.

23. Due to Nancy Skaletsky's employment with Neurosurgery as a nurse, Goldman had a right to rely upon Nancy Skaletsky's false statement.

24. Goldman in fact relied upon Nancy Skaletsky's false statement and republished such statement to Edward Hospital.

* * *

30. Goldman incurred legal and other costs as a result of her reliance upon Nancy Skaletsky's false representations to her.

31. Goldman suffered physical and emotional distress as a result of Nancy Skaletsky's misrepresentation."

Counts II, III, and IV of the third-party complaint alleged causes of action for abuse of process against Minkow and Swarek & Associates and Hinshaw & Culbertson.

On July 5, 2001, Goldman filed a second amended countercomplaint against Neurosurgery and Rabin. The second amended countercomplaint alleged two counts of abuse of process. Specifically, count I of the second amended countercomplaint alleged:

"38. On December 22, 1999, the Chicago Tribune published an article relating to a lawsuit filed by [p]laintiffs.

* * *

41. When she reviewed the Tribune [a]rticle, Goldman noted that the name of the defendant was not disclosed.

42. After reviewing the Tribune article, Goldman concluded that she was the defendant in the lawsuit mentioned in the Tribune [a]rticle.

* * *

45. On December 22, 1999, Minkow called Goldman at about 10:00 a.m.

46. During the December 22, 1999, telephone conversation, Minkow disclosed that he represented the plaintiffs.

47. During the December 22, 1999, conversation, Minkow specifically referred to the Tribune [a]rticle.

48. During the December 22, 1999, conversation, Minkow stated as follows to Goldman with respect to the Tribune [a]rticle: 'Notice that your name and the nature of your illness were not revealed.'

49. When Minkow stated to Goldman 'Notice that your name and nature of your illness was not revealed,' in the context of the Tribune [a]rticle and the telephone conversation, Minkow created an apprehension that Minkow was threatening to reveal publicly confidential medical information regarding Goldman's medical condition.

\* \* \*

51. During the December 22, 1999, conversation, Minkow stated to Goldman that if she did not have a lawyer that [*sic*] she should obtain one from the Du Page County Bar Association.

52. When Minkow suggested to Goldman that she should obtain legal assistance from the Du Page County Bar Association, in the context of the telephone call, Minkow created an apprehension that the [p]laintiffs had made available financial records which were part of Goldman's confidential medical records.

\* \* \*

60. On December 22, 1999, during the afternoon, Goldman was served with the following documents: Summons, Complaint and letter from Minkow dated December 22, 1999.

61. In the Minkow [l]etter, Minkow stated to Goldman as follows: 'If you wish to discuss an early resolution of this matter please call me.'

\* \* \*

101. All of the acts committed by Minkow alleged above were conducted within the scope of the authority granted by [p]laintiffs to Minkow, as their attorney.

\* \* \*

105. The above acts of the plaintiffs and Minkow, and each of them, caused Goldman severe emotional distress and anxiety as a direct, proximate and foreseeable result of such conduct."

Count II of the second amended countercomplaint incorporated the allegations from count I. Count II of the countercomplaint further alleged:

"113. During the January 17, 2000 telephone conversation, Minkow repeatedly implied to Goldman that he would terminate the lawsuit if Goldman agreed to testify to that [*sic*] she had an affair with Dr. Skaletsky and that she received drugs from Dr. Skaletsky.

\* \* \*

118. Minkow's offer to terminate the above-captioned lawsuit in return for Goldman's false testimony that she had an affair with Dr. Skaletsky and that Dr. Skaletsky gave her drugs in return for sexual favors constitutes attempted extortion of Goldman's false testimony."

On September 20, 2001, upon motion by Nancy Skaletsky, the trial court dismissed count I of Goldman's third-party complaint pursuant to section 2—615 of the Code. On October 11, 2001, the trial court ordered that the dismissal was with prejudice. On January 29, 2002, upon motion by the plaintiffs, the trial court dismissed, with prejudice, Goldman's second amended countercomplaint pursuant to section 2—615 of the Code. The trial court found that there was no reason for delaying enforcement or appeal of this order or its previous orders dated September 20, 2001, and October 11, 2001. Goldman thereafter filed a timely notice of appeal.

Goldman's first argument on appeal is that the trial court erred in dismissing her countercomplaint pursuant to section 2—615 of the Code. She maintains that her countercomplaint sufficiently stated two counts of abuse of process.

■ The question presented by a section 2—615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Hough v. Kalousek*, 279 Ill. App. 3d 855, 862 (1996). Illinois is a fact-pleading jurisdiction that requires a plaintiff to present a legally and factually sufficient complaint. *Hough*, 279 Ill. App. 3d at 863. The plaintiff is not required to prove his or her case, but must allege sufficient facts to state all the elements of the asserted cause of action. *Inland Real Estate Corp. v. Tower Construction Co.*, 174 Ill. App. 3d 421, 433 (1988).

When ruling on a section 2—615 motion to dismiss, the trial court should admit all well-pleaded facts as true and disregard legal and factual conclusions that are unsupported by allegations of fact. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 456-57 (1995). If, after disregarding any legal and factual conclusions, the complaint does not allege sufficient facts to state a cause of action, the trial court must grant the motion to dismiss. *Lake County Grading Co.*, 275 Ill. App. 3d at 457. The standard of review on a section 2—615 dismissal is *de novo*. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1084 (1994).

■ Abuse of process is the misuse of legal process to accomplish some purpose outside the scope of the process itself. *Bonney v. King*,

201 Ill. 47, 50-51 (1903). The two distinct elements of an abuse of process claim are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of process that is not proper in the regular course of proceedings. *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 966 (1972). Because the tort of abuse of process is not favored under Illinois law, the elements must be strictly construed. See *Erlich v. Lopin-Erlich*, 195 Ill. App. 3d 537, 539 (1990).

■ In order to satisfy the first element, a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment. *Community National Bank in Monmouth v. McCrery*, 156 Ill. App. 3d 580, 583 (1987). However, the mere institution of a suit for an improper purpose does not itself constitute an abuse of process, the second element being the gravamen of the offense. *McCrery*, 156 Ill. App. 3d at 583. In order to satisfy the second element, the plaintiff must plead facts that show a misapplication of process, or, in other words, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process. *McCrery*, 156 Ill. App. 3d at 583. When process is used only for its intended purpose, there has been no misapplication of process. *Holiday Magic, Inc.*, 4 Ill. App. 3d at 969.

■ In the present case, we believe that the trial court properly dismissed Goldman's second amended countercomplaint. Neither count I nor count II of the second amended countercomplaint alleged facts that show a misapplication of process. With regard to this element, the countercomplaint merely alleged that a summons was issued. This was insufficient.

"Process" has been defined as any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property. *McCrery*, 156 Ill. App. 3d at 583. Therefore, the issuance of a summons can be categorized as process. However, the second element is not satisfied by pleading that there has been process. As noted above, a party must plead that there has been a misapplication of that process. *McCrery*, 156 Ill. App. 3d at 583. A summons is issued in just about every case in which a lawsuit is filed. The intended purpose of a summons is to establish a court's *in personam* jurisdiction over a person. See *Coyne v. OSF Healthcare System*, 332 Ill. App. 3d 717, 719 (2002). It is neither irregular nor improper to cause a summons to be issued when proceedings are instituted against someone. Rather, it is always proper to issue a summons. See 735 ILCS 5/2—201(a) (West 2000). As such, the mere issuance of a summons cannot give rise to an abuse of process. See *Holiday Magic, Inc.*, 4 Ill. App. 3d at 969; see also *Landau v. Schneider*, 154 Ill. App. 3d 875, 879-80 (1987).

In a proper factual context, a fraudulent and malicious manipulation of service of summons might constitute an abuse of process; however, no such facts were alleged in this case. Nevertheless, even had such a scenario been pleaded, we note that the tort of abuse of process is a very narrow tort. See *Commerce Bank, N.A. v. Plotkin*, 255 Ill. App. 3d 870, 872 (1994). In fact, the *Holiday Magic* court has stated that a misapplication of process has been found only in cases in which a plaintiff has suffered an actual arrest or seizure of property. *Holiday Magic, Inc.*, 4 Ill. App. 3d at 969.

Additionally, Goldman's allegations regarding the first element of abuse of process, an improper motive, were also insufficient. Specifically, Goldman's allegations with regard to an improper motive were unclear and confusing. For example, Goldman's allegation that "[w]hen Minkow stated to Goldman 'Notice that your name and nature of your illness was not revealed,' in the context of the Tribune [a]rticle and the telephone conversation, Minkow created an apprehension that Minkow was threatening to reveal publicly confidential medical information regarding Goldman's medical condition" is bemusing and devoid of any indication of an improper motive. While pleadings are to be liberally construed with a view to doing substantial justice between the parties, section 2—603 of the Code requires that the pleadings shall contain a plain and concise statement of the pleader's cause of action. See 735 ILCS 5/2—603 (West 2000); see also *Buzzard v. Bolger*, 117 Ill. App. 3d 887, 890 (1983). Accordingly, as neither count I nor count II of Goldman's second amended countercomplaint alleged sufficient facts to satisfy the elements of abuse of process, the trial court did not err in dismissing the countercomplaint.

Goldman's second argument on appeal is that the trial court erred in dismissing count I of her third-party complaint. Goldman argues that count I of her third-party complaint alleged a cause of action for fraudulent misrepresentation. For the following reasons, we believe that the trial court properly dismissed count I of Goldman's third-party complaint.

■ We begin our discussion by noting that the tort of fraudulent misrepresentation is often surrounded by unnecessary confusion, because misrepresentations themselves often play large roles in a variety of other torts. For instance, an untrue assertion may be at the heart of an action for false imprisonment (see *Whitman v. Atchinson*, 85 Kan. 150, 116 P. 234 (1911)), conversion (see *Holland v. Bishop*, 60 Minn. 23, 61 N.W. 681 (1895)), or trespass to land (see *Donovan v. Consolidated Coal Co.*, 187 Ill. 28 (1900)). A misrepresentation is the essence of torts such as defamation, interference with contractual relations, and malicious prosecution. A malicious, outrageous lie may

even give rise to a cause of action for intentional infliction of emotional distress. See *Nickerson v. Hodges*, 146 La. 735, 84 So. 37 (1920). In summary, a great number of causes of action stem from misrepresentations.

However, not every misrepresentation gives rise to a cause of action for fraudulent misrepresentation. The origin of fraudulent misrepresentation lies in the common law action of deceit, which was a very narrow tort. See *Pasley v. Freeman*, 100 Eng. Rep. 450 (K.B. 1789); *Derry v. Peek*, 14 A.C. 337 (H.L. 1888). Prior to the eighteenth century, recovery on the action of deceit was not available unless the misrepresentation was part of some contractual dealing between the parties. Then, in 1789, in *Pasley*, it was held that one who fraudulently induced a third party to extend credit to a person known to be untrustworthy was liable to the defrauded party. *Pasley v. Freeman*, 100 Eng. Rep. at 450. Deceit, as a distinct tort, thus came into being, independent of any contractual relationship.

In 1889, in *Peek*, deceit became the tort we today refer to as fraudulent misrepresentation. In *Peek*, the directors of a tramway company issued a prospectus to induce the public to subscribe for stock; the prospectus contained the following unqualified statement: "[T]he company has the right to use steam or mechanical motive power instead of horses ***." *Peek*, 14 A.C. at 337. In fact, however, the company had no such right inasmuch as the government permitted the use of steam as a motive power only if the company first obtained governmental consent and the company had never obtained such consent. *Peek*, 14 A.C. at 337. Peek, a stockholder who had purchased shares on the faith of the prospectus, brought an action for deceit. *Peek*, 14 A.C. at 337. The court concluded that the defendants had honestly believed the statement to be true, although they had no reasonable grounds for any such belief. *Peek*, 14 A.C. at 337. It was held that the action could not be maintained, since nothing more than negligence was shown. *Peek*, 14 A.C. at 337.

Historically, the torts of deceit and fraudulent misrepresentation have been limited to cases involving business or financial transactions between parties, right down to the first recorded cases, *Pasley* and *Peek*. See W. Prosser, Torts § 105 (4th ed. 1971); see also *Johnson v. State*, 69 Cal. 2d 782, 800, 447 P.2d 352, 365, 73 Cal. Rptr. 240, 253 (1968) (holding that the tort of fraudulent misrepresentation applies only to interferences with financial or commercial interests). The United States Supreme Court has similarly observed:

"[M]any familiar forms of *** conduct may be said to involve an element of 'misrepresentation,' in the generic sense of that word, but '[s]o far as misrepresentation has been treated as giving rise in

and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.' " *United States v. Neustadt,* 366 U.S. 696, 711 n.26, 6 L. Ed. 2d 614, 624 n.26, 81 S. Ct. 1294, 1302 n.26 (1961), quoting W. Prosser, Torts § 85, at 702-03 (1941).

The tort of fraudulent misrepresentation has also historically been limited to cases where a plaintiff has suffered a pecuniary harm. See W. Prosser, Torts § 105 (4th ed. 1971); see also Restatement (Second) of Torts § 531 (1976) (defining damages only in terms of pecuniary loss). Where a plaintiff has sustained physical harm, recovery will lie in one of the above other tortious actions. See E. Kionka, Torts 268 (2d ed. 1993). Indeed, fraudulent misrepresentation is purely an economic tort under which one may recover only monetary damages. *McConkey v. AON Corp.,* 354 N.J. Super. 25, 59, 804 A.2d 572, 593 (2002) (holding that damages in a fraudulent misrepresentation action are limited to those that are pecuniary); *Jourdain v. Dineen,* 527 A.2d 1304, 1307 (Me. 1987) (holding that pecuniary damages are essential to a fraudulent misrepresentation cause of action).

> "Although the invasion of an economic interest by tort or by contract breach will often cause the plaintiff personal distress, the interest ordinarily protected in such cases is purely an economic interest and does not include interests in personality. Accordingly the usual rule is that the plaintiff must show pecuniary loss in misrepresentation cases and the damages are limited to such pecuniary loss, with no recovery for emotional distress." D. Dobbs, Remedies § 9.2(4), at 559-60 (2d ed. 1993).

While no court has yet specifically declined to extend fraudulent misrepresentation to noncommercial situations or to damages for physical harm, there is little occasion to depart from the historical trend that our predecessor courts have created because other nominate tort actions have provided adequate remedies. See W. Keeton, Prosser & Keeton on Torts §§ 105 through 110 (5th ed. 1984). Simply put, fraudulent misrepresentation has emerged as a tort distinct from the general milieu of negligent and intentional wrongs and applies only to interferences with financial or commercial interests where a party suffers some pecuniary loss.

■ Keeping the tort of fraudulent misrepresentation in historical context, we turn to the elements of a claim for fraudulent misrepresentation, which are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from

such reliance. *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989). The facts that constitute an alleged fraudulent misrepresentation must be pleaded with specificity and particularity. *Board of Education*, 131 Ill. 2d at 457.

■ In the instant case, Goldman alleges that Skaletsky made false statements of material fact in that "Nancy Skaletsky told Goldman that Rabin had been dismissed from the staffs of several hospitals." She alleges that "Nancy Skaletsky knew, or should have known that this statement was false." She then alleges that "Nancy Skaletsky made the false statement to Goldman *** for the purpose of Goldman relying on such statement and inducing her to republish such false statement to third parties." Goldman alleges that she had a right to rely on Nancy Skaletsky's statement "due to Nancy Skaletsky's employment with Neurosurgery as a nurse." Finally, Goldman alleges that she "incurred legal and other costs as a result of her reliance upon Nancy Skaletsky's false representations" and "suffered physical and emotional distress as a result of Nancy Skaletsky's misrepresentations."

Goldman's allegations fail to properly state a cause of action for fraudulent misrepresentation for several reasons. First, Goldman's allegations do not involve a business or financial transaction. The issue of a fraudulent misrepresentation claim in a noncommercial, nonfinancial setting is one of first impression in Illinois. However, as noted above, the tort of fraudulent misrepresentation has always, since being codified in the House of Lords by Lord Hershell in *Peek*, centered around a business or financial transaction. *Peek*, 14 A.C. at 337. Finding the foreign authorities and treatises cited above very persuasive, this court declines to extend the tort of fraudulent misrepresentation to encompass noncommercial and nonfinancial dealings between parties.

Second, even had the plaintiff alleged a scenario within a setting involving some commercial or financial transaction, the plaintiff fails to sufficiently allege the damages element of a fraudulent misrepresentation action. As discussed earlier, Goldman may not recover on her allegations of physical and emotional distress under an economic tort such as fraudulent misrepresentation. *McConkey*, 354 N.J. Super. at 59, 804 A.2d at 593; *Jourdain*, 527 A.2d at 1307. The maker of a fraudulent misrepresentation is subject to liability for pecuniary losses only.

Goldman's remaining allegation concerning pecuniary damages was insufficient. With regard to pecuniary damages, Goldman alleged that she "incurred legal fees and other costs as a result of her reliance upon Nancy Skaletsky's false representations." This allegation that

Nancy Skaletsky caused her to incur fees and costs constituted nothing more than an unsupported conclusion. Moreover, this allegation fails to conform to the requirement that each element of a fraudulent misrepresentation action be pleaded with specificity and particularity. *Board of Education of City of Chicago*, 131 Ill. 2d at 457. Although we may surmise that the legal fees Goldman complains of are the fees that she incurred from being sued for defamation by Dr. Rabin, we can just as easily surmise that the legal fees she seeks are fees incurred in bringing the instant action against Nancy Skaletsky or even in bringing her numerous abuse of process claims. In summary, we hold that the trial court did not err in dismissing count I of Goldman's third-party complaint.

In so ruling, we note that the Goldman's third-party complaint appears to be a subterfuge for an action for contribution from Nancy Skaletsky. Under the Joint Tortfeasor Contribution Act, one tortfeasor can be held liable to a joint tortfeasor, for contribution, for his or her *pro rata* share of damages in causing or contributing to causing a plaintiff's injuries. 740 ILCS 100/1 through 5 (West 2000). However, in *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 206 (1989), our supreme court held that contribution is unavailable to intentional tortfeasors. Although defamation can be predicated on recklessness or negligence, in this case, the plaintiffs' defamation *per se* and *per quod* actions against Goldman were solely predicated on specific intent, alleging that Goldman had intended to defame and acted with malice. As such, Goldman's creative attempt at contribution must fail. See *Gerill*, 128 Ill. 2d at 206.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

O'MALLEY and CALLUM, JJ., concur.