NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250188-U

NO. 4-25-0188

IN THE APPELLATE COURT

FILED
October 20, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| CONNIE S. MAIN, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Knox County |
| REBECCA LUNDEEN, | ) | No. 21L21 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | James G. Baber, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err in granting defendant's motion for summary judgment. Plaintiff forfeited the remainder of her appellate claims by failing to comply with the requirements of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020).

¶ 2   Plaintiff, Connie S. Main, appeals the trial court's judgment granting the motion for summary judgment of defendant, Rebecca Lundeen, with respect to plaintiff's amended complaint. For the reasons discussed below, we affirm.

¶ 3   I. BACKGROUND

¶ 4   In August 2022, plaintiff filed an amended complaint alleging the following causes of action against defendant: (1) malicious prosecution, (2) abuse of process, (3) false imprisonment, and (4) defamation *per se*. Plaintiff's allegations centered around an event that occurred on May 27, 2020, and ultimately led to her being arrested on June 17, 2020, and charged with the criminal offense of disorderly conduct in Knox County Case No. 20-CM-334.

Specifically, plaintiff alleged the following occurred on May 27, 2020:

"Plaintiff—the passenger, and Plaintiff's husband—the driver, were in their 2010 white Honda checking their farmland crops all along the east side of 2800 Knox Road 1240E in Altona, Illinois. It is a rural country road wherein their property starts at a 'T' corner approximately 1/2 mile north of Defendant's rural residence. Defendant's rural residence sits on the west side directly across the road from Plaintiff and Plaintiff's field gate entry at the top of the hill. The road continues south of Defendant's house and Plaintiff and Plaintiff's farmland for another 1/4 mile approximately ***. This day, Plaintiff's vehicle's path was being blocked and halted near the gate entry of Plaintiff's husband's farmland. Defendant's dog was illegally stray by Illinois law and Knox County statute, and reported October 27, 2020, by the Sheriff's Department answering Plaintiff's [Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2020))] request of June 17, 2020, non-registered, and non-inoculated—unbeknownst to Plaintiff and Plaintiff's husband, while running around their vehicle blocking and halting its path, jumping, and barking."

¶ 5        Plaintiff alleged that after driving around the dog, her "husband stopped at a stop sign south of Defendant's house *** and reported [the incident involving defendant's dog] to non-emergency 911 dispatch." Plaintiff further alleged that: (1) defendant also reported the incident "to non-emergency 911 dispatch," (2) her "husband and Defendant both verbally reported [the incident] to Sheriff's Deputy Jacque Arthur-Dare," and (3) they both also provided Deputy Dare with a written statement of their respective version of the events. According to plaintiff, defendant reported to authorities that she had seen a vehicle stopped in the road in front

of her house and " 'someone in the front passenger seat with the windows down that appeared to be using a hand held video recorder out the window towards the direction of a pig pen in [her] yard and also towards the area that [her] children were playing.' " Plaintiff further alleged that "[f]or the sole reasons reported by Defendant to non-emergency 911 dispatch *** to Sheriff's Deputy Dare, then supporting each with a *** sworn statement," she was " 'Warrant' arrested [on] June 17, 2020," and charged with the criminal offense of disorderly conduct in case No. 20-CM-334, with the charge ultimately being "dismissed '*Nolle Prosequi*' " in April 2022.

¶ 6    With respect to plaintiff's malicious prosecution claim, she alleged that defendant "had no reasonable or probable cause to report [her] *** to law enforcement" but instead "alleged Plaintiff and Plaintiff's husband were photographing her children as malice and retaliation for reporting her illegal dog and pursuing her husband's arrest after he criminally damaged Plaintiff's rural residential property near midnight using his company truck [in] 2017." Plaintiff further alleged: "If not for Defendant's allegations, actions and behaviors, law enforcement would not have 'Warrant' arrested Plaintiff ***. Instead, Plaintiff *** w[as] prosecuted *** based upon information law enforcement gathered from Defendant. Law enforcement's decision was based upon Defendant's reporting and sworn statement solely." As for plaintiff's three other claims, she alleged as follows:

"Defendant acted maliciously, perversely and deliberately misused and abused criminal court process without probable cause for improper purposes initially [on] May 27, 2020, and for 2 years thereafter to protect her veterinarian license, because her dog was in violation of [the] Animal Control Act [(510 ILCS 5/1 *et seq.* (West 2020))] another year, and as retaliation for Plaintiff reporting her dog again to law enforcement as she had done in prior years and because Plaintiff

caused the arrest of her husband [in] 2017 for criminally damaging Plaintiff's rural residential property using his company vehicle near midnight to do so, and to keep Plaintiff and her husband from their farm property directly across the road from their newly built rural residence."

¶ 7 In September 2024, defendant filed a motion for summary judgment. Defendant attached the following documents to her motion: (1) warrants issued for plaintiff's arrest in Knox County case Nos. 20-CM-312, 20-CM-333, and 20-CM-334; (2) a criminal complaint charging plaintiff with disorderly conduct in case No. 20-CM-312, a criminal complaint charging plaintiff with aggravated assault and disorderly conduct in case No. 20-CM-333, and a criminal complaint charging plaintiff with disorderly conduct in case No. 20-CM-334; (3) an affidavit of Deputy Dare; (4) an audio recording of both defendant's and plaintiff's husband's nonemergency 911 calls made on May 27, 2020; (5) Deputy Dare's written report of the May 27, 2020, incident; (6) an affidavit of defendant; (7) transcripts of the sentencing hearings in case Nos. 20-CM-312 and 20-CM-333; (8) a statement of *nolle prosequi* in case No. 20-CM-334; and (9) an affidavit of Knox County State's Attorney Jeremy S. Karlin.

¶ 8 According to the allegations in the criminal complaint filed in case No. 20-CM-334, on May 27, 2020, plaintiff "knowingly yelled at, cursed at, and berated the dog owned by [defendant] while in the presence of [defendant] and her three young children in such an unreasonable manner as to alarm and disturb [defendant] and her three young children, and provoke a breach of the peace." Defendant attached to her sworn affidavit, "and by reference incorporated," her written statement to Deputy Dare concerning the incident on May 27, 2020, in which defendant stated the following:

"Today at approximately 1:25 p.m. I was in my backyard playing with my

3 young children and our dog, a 12 year old female Golden Retriever. I walked through the house and cut through the front yard to check the mailbox and pick up mail. When walking back towards the house in our driveway I noticed a white car stopped in the road just north of our house at the bottom of the hill. I started walking through our yard closer to the vehicle to see if everything was okay and saw someone in the front passenger seat with the windows down that appeared to be using a hand held video recorder out the window towards the direction of a pig pen in our yard and also towards the area that my children were playing. As I came closer the car started moving very slowly southbound approaching our house and idling in the road at the end of our driveway near our mailbox. At that point my dog came through the north side of our yard to greet me when she saw me walking back towards the house. She then noticed the car idling near our mailbox and I heard the occupants of the car making noises in her direction. *** I started calling to my dog but was carrying mail and trying to calm my 3 children that had walked to the front yard to find me and was unable to get her before she approached the car. Once my dog approached the vehicle I saw a woman then hang out of the side of the passenger window with a hand held video camera yelling at my dog and shouting expletives. I heard her shout 'Get the F*** away!' and I recognized the vehicle and occupants as [plaintiff's husband] and [plaintiff]. As they drove past the house my dog quickly returned to me once they passed through the area directly in front of our home. I then quickly contacted the non-emergency line to report what had just happened. This was very upsetting to both my 3 children that were present and myself."

¶ 9    Knox County Sheriff's Deputy Jaque Dare averred, in pertinent part, the following in her sworn affidavit attached to defendant's motion for summary judgment:

"4. The charge *** in Knox County Case No. 20-CM-312, arose out of an encounter between David Benson and [plaintiff] that occurred *** on May 7, 2020.

***

6. The charges *** in Knox County Case No. 20-CM-33[3], resulted out of an encounter that occurred between U.S. Postal employee, Jean McCann and [plaintiff] that occurred *** on May 28, 2020.

7. On May 7, 2020, I originally issued a Disorderly Conduct citation to [plaintiff], along with a Notice to Appear, and sent both to her by certified mail, return receipt requested in regards to the charge *** that was ultimately filed in Knox County Case No. 20-CM-312.

8. On May 27, 2020, I consulted with Assistant Knox County State's Attorney [(ASA)] Ashley Worby about how to proceed relative to the incident involving [defendant] and [plaintiff]. I advised ASA Worby of the information I had obtained from [defendant] and [plaintiff's husband] and ASA Worby advised me to proceed with charges against [plaintiff] for Disorderly Conduct ***.

9. On that same date, May 27, 2020, I also spoke with the Altona Post Office and learned that the certified letter I had sent to [plaintiff] regarding the May 7, 2020, event had not been received or signed for by [plaintiff]. I then advised ASA Worby of that fact and it was then determined that since it had been almost 3 weeks since the letter was mailed and [plaintiff] had not claimed the

certified letter, a warrant for the arrest of [plaintiff] would be sought on both the May 7, 2020, incident *** and the May 27, 2020, incident ***.

10. Subsequently, on the following day ***, in the course of my investigation of the incident involving U.S. Postal employee, Jean McCann and [plaintiff], I sent my report to the Knox County State's Attorney's Office requesting an arrest warrant for [plaintiff] on the charges of aggravated assault of a government official, intimidation and disorderly conduct.

11. On June 1, 2020, I met with ASA Worby and together we appeared before Judge Curtis Lane. I advised Judge Lane of the information I had learned in each of my investigations ***.

12. On June 1, 2020, after hearing the information presented, Judge Lane simultaneously issued warrants for the arrest of [plaintiff in all three cases. ***

13. On June 17, 2020, [plaintiff] was simultaneously arrested on all three warrants.

14. At no time throughout my investigation of the three above listed incidents did [defendant] ever ask for [plaintiff] to be arrested for the offense of Disorderly Conduct for the May 27, 2020 event.

15. At no time throughout my investigation of the three above listed incidents did [defendant] ever ask for [plaintiff] to be prosecuted for the offense of Disorderly Conduct for the May 27, 2020 event."

¶ 10 Knox County State's Attorney Jeremy Karlin averred, in pertinent part, the following in his sworn affidavit attached to defendant's motion for summary judgment:

"7. Knox County Case No. 20-CM-312 proceeded to a jury trial ***. ***

- 7 -

[T]he jury returned a guilty verdict against [plaintiff] on the offense of Disorderly Conduct. *** At the sentencing hearing I recommended to the Court that part of [plaintiff's] sentence should include a mental health evaluation and compliance with any recommended follow up treatment. The sentencing judge did not accept my recommendation that [plaintiff] undergo a mental health evaluation. ***

8. Knox County Case No. 20-CM-333 proceeded to a jury trial ***. *** [T]he jury returned a guilty verdict against [plaintiff] on the offense of Disorderly Conduct. *** At the sentencing hearing [ASA] Arman recommended to the Court that part of [plaintiff's] sentence should include a mental health evaluation and compliance with any recommended follow up treatment. The sentencing judge did not accept the State's recommendation that [plaintiff] undergo a mental health evaluation. ***

9. In Knox County Case No. 20-CM-334, as Knox County State's Attorney, I *nolle prosequi* the charge of Disorderly Conduct against [plaintiff] on April 25, 2022. In doing so I stated my reasons for the filing of the *Nolle Prosequi*, those being:

> *'The Office of the State's Attorney of Knox County, having considered the nature of the offenses, the evidence herein, finds the best interests of justice would be served by a nolle prosequi.'*
> *'Other: Believes best outcome upon finding of guilt is for defendant to receive mental health evaluation. Assigned judge unwilling to do this.'*

10. My decision to *nolle prosequi* the charge of Disorderly Conduct that had been filed against [plaintiff] was not motivated by any belief that [plaintiff]

was innocent of the charge. Nor was it motivated by my assessment that the State could not prove [plaintiff's] guilt beyond a reasonable doubt. Rather my decision was based solely upon the consideration that [the] State did not wish to further consume State and County resources in bringing [plaintiff] to trial and secure a conviction, only to have the sentencing court not impose the remedial aspect of ordering a mental health evaluation of [plaintiff]. (Emphasis in original.)"

¶ 11    Plaintiff filed a response to defendant's motion for summary judgment, but she did not attach any affidavits thereto. Following a hearing, the trial court granted defendant's motion for summary judgment.

¶ 12    This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, plaintiff raises the following arguments: (1) the trial court erred in granting defendant's motion for summary judgment "based on counterfactual interpretations of material facts that are against sound legal principles and facts of the case, which rendered [the] order unsound [and] biased"; (2) the court further erred in granting defendant's motion for summary judgment by "failing to consider statutory factors (Animal Control Act and County Ordinances) [and] standards—preponderance of the evidence, which story is more likely true [and] failed to consider crucial factual material evidence of the case *** [and] instead disregarded obvious misrepresented material facts"; (3) the court erred in "dismissing [her] last filed Motion for Summary Judgment based on counterfactual decisions and interpretations, which violated [her] Constitutional Rights to fairness, justice [and] due process"; and (4) the court "violat[ed] Judicial Precedent (horizontal *stare decisis*) when Judge Baber changed a Motion to Compel to a Motion for Reconsideration—planted by opposing counsel—[and] denied

- 9 -

discovery previously ordered by Judge Rasmussen."

¶ 15                                A. Plaintiff's Failure to Comply

With Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020)

¶ 16        Initially, we note plaintiff has forfeited each of the arguments raised in her *pro se* appellant's brief by failing to comply with the citation requirements of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Rule 341(h)(7) provides that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." *Id.* The "failure to assert a well-reasoned argument supported by legal authority is a violation of Rule 341(h)(7) resulting in forfeiture." *People v. Ivanchuk*, 2025 IL App (4th) 241230, ¶ 43. "[T]he procedural rules governing the content and form of appellate briefs are mandatory and not suggestions." *Litwin v. County of La Salle*, 2021 IL App (3d) 200410, ¶ 3. "*Pro se* litigants are not excused from following rules that dictate the form and content of appellate briefs." *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5.

¶ 17        Here, in arguing the trial court erred in granting defendant's motion for summary judgment, plaintiff does not include a single citation to authority or even identify the elements of the causes of action alleged in her amended complaint. Further, plaintiff's entire argument that the court erred in denying her third motion for summary judgment consists of the following two sentences:

"The trial court dismissed [plaintiff's] Motion for Summary Judgment last filed 3/15/24 (C416-C499 V2); heard 7/26/24—4-1/2 months later (C711-C712 V2), yet granted [defendant's] filed 9/19/24 (C728-C1000 V3); heard 12/4/24 (R328[ ]-R363)—approximately 2 months later with the Judge's Order based off

- 10 -

counterfactual decisions and interpretations. (C1029-C1044 V3)[.] This violated [plaintiff's] Constitutional Rights to fairness, justice and due process."

With respect to plaintiff's final argument, that the court erred in "chang[ing] a Motion to Compel to a Motion for Reconsideration," plaintiff does not even include a citation to the record identifying the relevant "Motion to Compel" or the court's order that allegedly "changed" the motion to a motion to reconsider. Given that plaintiff filed numerous motions to compel discovery, we decline to sift through the record only to speculate as to which motion and order she is now challenging on appeal. See, *e.g.*, *Alms v. Peoria County Election Comm'n*, 2022 IL App (4th) 220976, ¶ 28 ("Reviewing courts are not depositories where litigants may dump the burden of argument and research."). Accordingly, we find plaintiff has forfeited each of the arguments raised in her *pro se* appellant's brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Ivanchuk*, 2025 IL App (4th) 241230, ¶ 43.

¶ 18 Despite plaintiff's clear violation of Rule 341(h)(7) and the resulting forfeiture of her appellate claims, we will nonetheless address the issue of whether the trial court erred in granting defendant's motion for summary judgment, as defendant has provided citations to the relevant portions of the record and to relevant authority in her appellee's brief. See, *e.g.*, *In re Marriage of Debra N.*, 2013 IL App (1st) 122145, ¶ 44 ("Although a party's failure to comply with Rule 341 is grounds for disregarding the arguments raised on appeal, it is not a limitation on this court's jurisdiction to consider the matter.").

¶ 19 B. The Trial Court's Grant of

Defendant's Motion for Summary Judgment

¶ 20 As stated, plaintiff argues the trial court erred in granting defendant's motion for summary judgment. Defendant, on the other hand, contends the court was correct in granting her

motion because "on at least one element of each cause of action alleged by plaintiff, [she] has established that there is an absence of evidence to support the necessary elements to prove the causes of actions alleged." We review *de novo* the question of whether defendant was entitled to a judgment in her favor as a matter of law. See, *e.g.*, *National Tractor Parts Inc. v. Caterpillar Logistics Inc.*, 2020 IL App (2d) 181056, ¶ 38 ("In reviewing the circuit court's grant of summary judgment, we review the judgment *de novo*, and we may affirm on any grounds found present in the record.").

¶ 21     "The purpose of summary judgment is not to try a question of fact, but to determine whether any genuine issues of triable fact exist." *Watkins v. Schmitt*, 172 Ill. 2d 193, 203 (1996). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). However, "where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). "If a plaintiff fails to establish one element of the cause of action, summary judgment in favor of the defendant is appropriate." *National Tractor Parts Inc.*, 2020 IL App (2d) 181056, ¶ 38.

¶ 22     "[A] defendant moving for summary judgment bears the initial burden of production," which may be satisfied "(1) by affirmatively showing that some element of the case must be resolved in [the movant's] favor [citation] or (2) by establishing that there is an absence of evidence to support the nonmoving party's case." (Internal quotation marks omitted.) *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). If the moving party meets its initial burden

of production by providing sworn facts demonstrating it is entitled to a judgment in its favor, "the burden then shift[s] to the plaintiff to present a factual basis which would arguably entitle her to a favorable judgment." *Id.* "If the party seeking summary judgment supplies facts via affidavit, which, when left uncontradicted, would warrant judgment in its favor as a matter of law, the opponent may not sit idly by and rely on his pleadings to create a genuine material factual issue." *Cano v. Village of Dolton*, 250 Ill. App. 3d 130, 139 (1993). "Failure to oppose a summary judgment motion supported by affidavits or stipulations by filing counteraffidavits in response is fatal." *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 391 (1994).

¶ 23                                    1. *Malicious Prosecution*

¶ 24            In her amended complaint, plaintiff first alleged that defendant was liable for the tort of malicious prosecution. In part, she alleged: "Defendant had no reasonable or probable cause to report Plaintiff *** to law enforcement, nor to act as [a] witness by providing a sworn statement for the State to prosecute Plaintiff initially or for nearly 2 years thereafter, because no criminal act occurred."

¶ 25            The tort of malicious prosecution is comprised of five elements: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." (Internal quotation marks omitted.) *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). "The absence of any of these elements bars a plaintiff's malicious prosecution claim." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 26. "In regard to the second element, a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Swick*, 169 Ill. 2d at 512. "Public policy

favors the exposure of crime, and courts should encourage and protect citizen cooperation by 'narrowly circumscribing' the circumstances in which malicious prosecution actions may be brought." *Vincent v. Williams*, 279 Ill. App. 3d 1, 5 (1996) (quoting *Misselhorn v. Doyle*, 257 Ill. App. 3d 983, 986 (1994)).

¶ 26   In *Swick*, the supreme court addressed for the first time the question of "[w]hether the [*nolle prosequi*] of a criminal charge constitutes a favorable termination in a malicious prosecution action." *Swick*, 169 Ill. 2d at 512. The *Swick* court resolved this question of first impression as follows:

> "In a criminal context, a *nolle prosequi* is not a final disposition of a case but \*\*\* is a procedure which reverts the matter to the same condition which existed before the commencement of the prosecution. [Citation.] In the civil malicious prosecution context, the majority rule is that a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused. [Citations.] The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial. [Citation.] We find that the majority rule best reflects the need to balance an individual's right to be free from unreasonable criminal prosecutions with the public policy which favors the exposure of crime. [Citation.] Accordingly, we adopt this rule."

*Id.* at 512-13.

In adopting the majority rule, the supreme court went on to note that the burden of proving a favorable termination remains with the plaintiff and "[o]nly when a plaintiff establishes that the *nolle prosequi* was entered for reasons consistent with his innocence does the plaintiff meet his burden of proof." *Id.* at 513. The *Swick* court stressed that the "circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id.* at 513-14.

¶ 27 Here, although plaintiff is unable to establish multiple elements of her claim for malicious prosecution, we only find it necessary to address her inability to establish the second element of her claim. Specifically, defendant attached to her motion for summary judgment the affidavit of Knox County State's Attorney Karlin. Karlin averred that his "decision to *nolle prosequi* the charge of disorderly conduct *** was not motivated by any belief that [plaintiff] was innocent of the charge." Instead, Karlin averred that his "decision was based solely upon the consideration that [the] State did not wish to further consume State and County resources in brining [plaintiff] to trial and secure a conviction, only to have the sentencing court not impose the remedial aspect of ordering a mental health evaluation of [plaintiff]." Plaintiff did not file any counteraffidavits in response to defendant's motion contradicting Karlin's assertion that the abandonment of the charges was for a reason not at all indicative of her innocence. See *Fitzpatrick*, 267 Ill. App. 3d at 391 ("Failure to oppose a summary judgment motion supported by affidavits or stipulations by filing counteraffidavits in response is fatal."); *Swick*, 169 Ill. 2d at 512-13. Accordingly, because plaintiff cannot demonstrate the charge was abandoned for a reason indicative of her innocence, we find defendant was entitled to a judgment in her favor as a matter of law on the malicious prosecution claim. See, *e.g.*, *Beaman*, 2019 IL 122654, ¶ 26 ("The

absence of any [one] element[ ] bars a plaintiff's malicious prosecution claim."); *National Tractor Parts Inc.*, 2020 IL App (2d) 181056, ¶ 38 ("If a plaintiff fails to establish one element of the cause of action, summary judgment in favor of the defendant is appropriate.").

¶ 28                                    2. *Abuse of Process*

¶ 29          Next, plaintiff alleged defendant was liable for the tort of abuse of process. In relevant part, she alleged: "Defendant, maliciously, perversely and deliberately misused and abused criminal court process without probable cause for improper purposes initially [on] May 27, 2020, and for 2 years thereafter to protect her veterinarian license *** and as retaliation for Plaintiff reporting her dog again to law enforcement."

¶ 30          The tort of abuse of process has been defined as "the misuse of legal process to accomplish some purpose outside the scope of the process itself." *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 182 (2003) (citing *Bonney v. King*, 201 Ill. 47, 50-51 (1903)). In this context, "process" refers to "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property." *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 968 (1972). To recover on a claim of abuse of process, a plaintiff must prove two elements: "(1) the existence of an ulterior purpose or motive and (2) some act in the use of process that is not proper in the regular course of proceedings." *Neurosurgery*, 339 Ill. App. 3d at 183. Concerning the second element, a plaintiff must prove "the process has been used to accomplish some result which is beyond the purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally be compelled to do." *Community National Bank in Monmouth v. McCrery*, 156 Ill. App. 3d 580, 583 (1987). "The usual case of abuse of process is one of some form of extortion, using the process to put pressure on someone to compel him to pay a different debt or to take or refrain from taking some

other action." *Id.* (citing Restatement (Second) of Torts, § 682 (1977)). "An actionable tort [for abuse of process] does not exist unless there is some improper use of the process of the court." *Holiday Magic, Inc.*, 4 Ill. App. 3d at 967. "Because the tort of abuse of process is not favored under Illinois law, the elements must be strictly construed." *Neurosurgery*, 339 Ill. App. 3d at 183.

¶ 31        Here, contrary to plaintiff's allegation that defendant "maliciously, perversely and deliberately misused and abused criminal court process," the undisputed facts demonstrate that defendant never used the process of the court. Rather, she merely reported plaintiff's alleged conduct to a nonemergency 911 line and subsequently provided a written statement to the police. It was the State, not defendant, who used the process of the court to arrest plaintiff for the offense of disorderly conduct. Moreover, Deputy Dare made it clear in her affidavit that defendant never asked her to arrest plaintiff for the offense of disorderly conduct. Accordingly, because there was no improper use of the process of the court by defendant, plaintiff's claim necessarily fails. See *Holiday Magic, Inc.*, 4 Ill. App. 3d at 967 ("An actionable tort does not exist unless there is some improper use of the process of the court.").

¶ 32                                3. *False Imprisonment*

¶ 33        Next, plaintiff alleged defendant was liable for the tort of false imprisonment. Specifically, she alleged as follows: "If not for Defendant's allegations, actions and behaviors, law enforcement would not have 'Warrant' arrested Plaintiff ***. *** Law enforcement's decision was based upon Defendant's reporting and sworn statement solely."

¶ 34        "False imprisonment is an unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 474 (1990). "The elements of a cause of action for false imprisonment are: (1) that

the plaintiff was restrained or arrested by the defendant; and (2) that the defendant acted without reasonable grounds (*i.e.*, without probable cause) to believe that an offense was committed by the plaintiff." *Grainger v. Harrah's Casino*, 2014 IL App (3d) 130029, ¶ 38. A private-citizen defendant who supplied information to the arresting officer may be subject to liability for false imprisonment. See, *e.g.*, *Randall v. Lemke*, 311 Ill. App. 3d 848, 852 (2000). "However, the private defendant is subject to liability only if he either (1) directed the officer to arrest the plaintiff; or (2) procured the arrest by giving information that was the sole basis for the arrest." *Id.* (citing *Odorizzi v. A.O. Smith Corp.*, 452 F.2d 229, 231 (7th Cir. 1971)).

¶ 35        Here, plaintiff cannot establish a claim of false imprisonment for multiple reasons. First, the undisputed facts demonstrate defendant never directed police officers to arrest plaintiff. See *id.* Deputy Dare averred in her affidavit attached to defendant's motion for summary judgment that "[a]t no time throughout my investigation *** did [defendant] ever ask for [plaintiff] to be arrested for the offense of Disorderly Conduct for the May 27, 2020 event." Plaintiff did not file any counteraffidavits to contradict Deputy Dare's affidavit. See *Fitzpatrick*, 267 Ill. App. 3d at 391. Second, the undisputed facts demonstrate the information defendant provided to law enforcement officials was not the sole basis for plaintiff's arrest. See *Randall*, 311 Ill. App. 3d at 852. Deputy Dare averred that she and Knox County ASA Worby appeared before a judge on June 1, 2020, and secured warrants for plaintiff's arrest in case Nos. 20-CM-312, 20-CM-333, and 20-CM-334; defendant also attached each arrest warrant to her summary judgment motion. Deputy Dare further averred that on June 17, 2020, plaintiff "was simultaneously arrested on all three warrants." Because plaintiff was also arrested on charges unrelated to the charge predicated on the information provided by defendant, plaintiff cannot establish that defendant's accusation was the sole basis for her arrest. See *id.* ("However,

- 18 -

because plaintiff was arrested on charges *unrelated* to the one of which defendant accused him, defendant's accusation could not have been the sole basis for the arrest." (Emphasis in original.)). Lastly, we note plaintiff's claim also fails because she was arrested pursuant to a judicially issued arrest warrant. See *Weimann v. Kane County*, 150 Ill. App. 3d 962, 968 (1986) ("Where an arrest is made under a judicially issued arrest warrant, the arrest itself cannot give rise to a false imprisonment claim."). Accordingly, we find defendant was entitled to a judgment in her favor as a matter of law on the false-imprisonment claim. See *National Tractor Parts Inc.*, 2020 IL App (2d) 181056, ¶ 38.

¶ 36                                      4. *Defamation Per Se*

¶ 37          Lastly, plaintiff alleged a cause of action for defamation *per se* due to defendant baselessly accusing her of committing a criminal offense as retaliation for plaintiff having reported defendant's dog to law enforcement.

¶ 38          "To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009); see *Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 759 (2002) ("A statement is defamatory if it impeaches a person's reputation and thereby lowers that person in the estimation of the community or deters third parties from associating with that person."). There are five categories of statements deemed defamatory *per se*. When a statement falls into one of these categories, "the plaintiff need not plead or prove actual damage to her reputation to recover. [Citation.] Rather, statements that fall within these actionable *per se* categories are thought to be so obviously and materially harmful to the plaintiff that injury to her reputation may be presumed." *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87

- 19 -

(1996).

¶ 39        Statements "that impute the commission of a criminal offense" fall within one of

the categories of *per se* defamatory statements. *Id.* at 88. "To constitute defamation *per se* based

on imputing the commission of a crime, the crime must be an indictable one, involving moral

turpitude and punishable by death or imprisonment rather than by fine." *Jacobson v. Gimbel*,

2013 IL App (2d) 120478, ¶ 27. "Defamatory statements that would otherwise be actionable will

escape liability when the conduct is to further an interest of social importance such as the

investigation of an alleged crime." *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399,

404 (2009). "It has long been held that statements made to law enforcement officials, for the

purpose of instituting legal proceedings, are granted absolute privilege." *Vincent*, 279 Ill. App.

3d at 7. "When absolute privilege attaches, no action for defamation lies, even where malice is

alleged." *Id.*

¶ 40        In *Starnes v. International Harvester Co.*, 184 Ill. App. 3d 199, 203 (1989),

*abrogated on other grounds by Bryson*, 174 Ill. 2d at 108, the First District addressed the

question of whether statements made to law enforcement officials with a malicious intent were

afforded a conditional or absolute privilege. The trial court in *Starnes* dismissed the plaintiff's

complaint on the basis the statements at issue—allegations of judicial impropriety made to

federal law enforcement officials—were absolutely privileged. *Id.* at 201. On appeal, the plaintiff

argued the trial court had erred because when "communications [to law enforcement officials]

are made with malice," they should be afforded only a conditional, as opposed to absolute,

privilege. *Id.* at 203. The plaintiff reasoned that applying an absolute privilege to such statements

"condones and even encourages malicious harassment through police investigations." *Id.* The

*Starnes* court rejected the plaintiff's argument, citing in support of its decision a number of

Illinois cases holding that "communications made to prosecuting authorities concerning alleged criminal activities" are absolutely privileged. *Id.* at 204 (compiling cases). We note that Illinois courts have consistently reaffirmed the holding in *Starnes*. See, *e.g.*, *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 969-73 (1991) (holding allegedly false statements to the police that the plaintiff had harassed, assaulted, and threatened a coworker were protected by absolute privilege despite the allegation of malice); *Vincent*, 279 Ill. App. 3d at 7-8 (holding allegedly false statements to the police that the plaintiff had threatened the defendant with a knife were protected by absolute privilege); *Morris*, 392 Ill. App. 3d at 405-06 (holding allegedly false statements to the police that the plaintiff had stolen a vehicle were absolutely privileged despite the allegation the statements were made for the improper purpose of recovering the vehicle without refunding a down payment).

¶ 41        Here, it is undisputed that defendant made the allegedly defamatory statements to law enforcement officials. Thus, even accepting as true plaintiff's allegation that defendant maliciously reported her to the police as "retaliation for [plaintiff] reporting her illegal dog and pursuing her husband's arrest after he criminally damaged plaintiff's rural residential property," plaintiff's defamation claim still fails as a matter of law because defendant's statements were made to law enforcement officials, and they are therefore "cloaked with absolute privilege." *Vincent*, 279 Ill. App. 3d at 8; see *Starnes*, 184 Ill. App. 3d at 203 ("An absolute privilege provides complete immunity from civil action, even though the statements are made with malice, because public policy favors the free and unhindered flow of such information."). Accordingly, we find defendant was entitled to a judgment in her favor as a matter of law on the defamation claim. See *National Tractor Parts Inc.*, 2020 IL App (2d) 181056, ¶ 38.

¶ 42                                III. CONCLUSION

¶ 43    For the reasons stated, we affirm the trial court's judgment.

¶ 44    Affirmed.